## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### WHITEHEAD v. WHITEHEAD.

#### March 7th, 1889.

1. FIDUCIARIES—*Misconduct—Liability.*—Where fiduciary disobeys order of court having jurisdiction over him and trust fund, to make particular investments, he will be held individually responsible for all losses resulting from such misconduct.

2. IDEM—*Case at bar.*—Under the circumstances of this case (see opinion); HELD:

> The fiduciary, being president, stockholder and borrower of the bank wherein he had deposited the trust funds, and having failed to invest the funds as directed by the court, is liable for the loss of the funds by the failure of the bank.

3. IDEM—*Commissions.*—To allow or refuse commissions to fiduciaries is a matter of sound discretion with the court.

Appeal from decree of circuit court of Nansemond county, rendered November 29th, 1886, in the chancery cause of William R. Whitehead, guardian, &c., complainant, against John B. Whitehead, executor and trustee under the will of William B. Whitehead, deceased, defendant, determining the principles on which the accounts of said fiduciary should be settled; and also from decree in said cause rendered April 11th, 1889, against said fiduciary, John B. Whitehead, in favor of Robert B. Prentiss, curator of the estate of William B. Whitehead, deceased, for the sum of $77,358.10, with interest thereon from April 1st, 1885, till paid. Decree for complainant, defendant appeals. Opinion states the case.

*Walke & Old,* and *Tunstall & Thom,* for appellant.

*Robert R. Prentiss*, for appellee.

FAUNTLEROY, J., delivered the opinion of the court.

William B. Whitehead died in 1877, leaving a will by which he devised and bequeathed the bulk of his large estate to John B. Whitehead and John R. Kilby, as trustees, to accumulate for the benefit of his infant grandchildren ; directing and providing in his said will that they should apply to the circuit court of Nansemond for all necessary decrees, powers or orders. ` John R. Kilby having died on the 5th day of December, 1878, the surviving trustee, John B. Whitehead (the appellant here) continued in possession of the assets and acted alone. He never applied to the court for instruction, aid, or direction.

The guardian of certain of the *cestui que trusts* finding that the estate was not accumulating, and that the income from it was largely consumed in payment of taxes and other charges, in February, 1882, brought this suit, in his own name, as their guardian, and in their names, as their next friend, for the purpose of obtaining a decree authorizing a sale of the unproductive portion of the property, and of having the trust administered by a chancery court. The bill specifically prays that the funds arising from the sales of property and from the surplus income of the estate may be invested in United States bonds, or in such other good securities as the court should direct. The surviving executor and trustee, John B. Whitehead, answered the bill, admitting its allegations, and acquiescing in the objects and purposes of the suit. There was a decree responsive to the prayer of the bill, and John B. Whitehead was appointed special commissioner to make sale of the property decreed to be sold.

At the April term 1884, of the circuit court of Nansemond county, the executor and trustee, John B. Whitehead, reported an account of his transactions from August 1st, 1882, to August 1st, 1883, and it appearing from the said report that the said executor and trustee had a large amount of money to his credit

on deposit in the Exchange National Bank of Norfolk, an order or decree of court was thereupon, at that April term, 1884, entered directing him to invest *at least* $50,000 of the said deposits, in United States four per cent. registered bonds. In October, 1884, the said Whitehead then having, as special commissioner, a large amount in his hands, or to his credit in bank, a considerable part of which had been received by him subsequently to the decree of April term, 1884, a decree was entered authorizing him to invest the *further sum* of $50,000, out of any funds then in his hands, or thereafter coming into his hands, in United States four per cent. registered bonds—the said investments, when so made, to be made in his name as surviving executor and trustee, and to be held subject to the trusts of the will of his testator.

The next report of the executor and trustee's transactions from August 1st, 1883, to August 1st, 1884, was dated March 23d, 1885, and was made to the court April 27th, 1885, accompanied with the trustee's written resignation of the trust. It showed that the trustee had, up to August 1st, 1884, wholly failed to obey the decrees of April, 1884, and that on August 1st, 1884, he had over $100,000 of the trust fund in the Exchange National Bank of Norfolk. This report the court did not confirm, but entered an order thereupon appointing a curator to take possession of the trust fund, and referring the cause to a master commissioner to make a final settlement of John B. Whitehead's accounts as executor and trustee of William B. Whitehead, deceased; and also to report to the court the amount for which the said John B. Whitehead was responsible to the estate of William B. Whitehead, deceased, by reason of moneys deposited by him in the Exchange National Bank of Norfolk. The commissioner, after a careful and painstaking investigation, reported on the 15th day of September, 1886, for reasons set out in the report, that John B. Whitehead was responsible, as executor and trustee, for $47,002.74, and as special commissioner, for $33,099.03, aggregating an indebtedness to the trust fund of

$80,101.77. It also appears from this report that John B. Whitehead was a large stockholder in the Exchange National Bank, and its president. That he did not make the investment directed by the decree of April, 1884, until October 2d, 1884, and that, for the purpose of making it, he borrowed $48,300 of the purchase-money from the National Bank of the Republic of New York, although at that time he had over $100,000 belonging to the trust estate in the Exchange National Bank; and that he did not pay off the debt thus incurred until the 23d day of March, 1885, about a week before the failure of the Exchange National Bank. That the bonds did not become the property of the trust estate until March, 1885, nearly twelve months after he had been directed to withdraw from the fund, which he had on deposit in the Exchange National Bank of Norfolk, at least $50,000, and to invest the same in United States four per cent. registered bonds. That he failed altogether to make the further investment of $50,000 authorized by the decree of October 10th, 1884. That during the period from April, 1884, to the failure of the bank, in April, 1885, instead of obeying the orders of the court to invest the trust funds in United States bonds, he deposited them in the Exchange National Bank of Norfolk, and afterwards loaned to himself and George M. Bain, Jr., the cashier of the said bank, on August 1st, 1884, $12,741 as an investment of the fund. That on December 6th, 1884, he invested $7,700 of the trust fund in one hundred and fifty-four shares of the stock of the Norfolk and Ocean View Railroad and Hotel Company, which he purchased from himself at par. During all this period he was a large borrower from the Exchange National Bank, and at the time of its failure, his individual indebtedness to the said bank, and his indebtedness jointly with the cashier, Bain, and others, amounted to the enormous sum of $230,320.90. Upon this state of facts the court, being of opinion that John B. Whitehead is legally responsible, entered the decree of November 28th, 1886, adjudicating the principles upon which his accounts should be settled. The

report was substantially confirmed, though it was recommitted to the master commissioner with instructions to increase the appellant's commissions from two per cent. to three per cent. on the par value of the assets delivered by him in kind to the curator. He had already charged and been allowed five per cent. commission on the funds which passed through his hands. The three per cent. commission was allowed, in addition, upon those assets which had not been charged in character, but were merely delivered to his successor. The account was thus restated in accordance with the instruction of the court, and a personal decree pronounced against John B. Whitehead for $77,358.10. Of these two decrees the appellant is here complaining.

He assigns as error that the court held him personally liable for amounts due the trust estate, standing to his credit as executor and trustee, and as special commissioner in the Exchange National Bank of Norfolk, at the time of the failure of the said bank in April, 1885. He was expressly directed by the will to apply to the circuit court of Nansemond for aid and direction in administering the trust, and in making investments of the funds of the estate. As early as February, 1882, the chancery jurisdiction of the court was invoked by a suit asking the direction, authority and guidance of the court in making investments, and to have the funds of the estate securely invested in United States registered bonds, safe not only from ordinary casualties and misfortune, but beyond the control of the fiduciary himself; and as early as April term of the court, 1884, when he made the first report of funds in his hands belonging to the estate, he was directed, by a decree of the court, to invest at least $50,000 of the fund in United States four per cent. registered bonds. This he did not do until the 23d day of March, 1885, about a week before the failure of the bank. At the October term, 1884, it being apparent that the funds had largely accumulated in the hands of the executor and trustee by the realization of assets in New Orleans city bonds, and the court being wholly uninformed that he had not made the investment of $50,000 ordered by the

April term decree, and it not then appearing to the court what was the precise amount in the hands or under the control of John B. Whitehead, either as executor and trustee, or as special commissioner, the court, without discriminating between the funds held by him in the one character or the other, entered the decree authorizing him to invest the *further sum* of $50,000 out of any funds in his hands (in addition to the $50,000 ordered to be invested by the decree of the April term), in United States four per cent. registered bonds. The purpose of the court to invest the funds of the estate in United States bonds was thus clearly and unmistakably indicated and authoritatively expressed, not only as to all the trust funds then in the bank, but also as to all such funds as might be thereafter collected by him either as executor and trustee or as special commissioner ; yet, notwithstanding the orders of the court that these large amounts should not longer remain in the Exchange National Bank, John B. Whitehead never did make the investment directed by the decree of October term, 1884. The trust estate has been lost, because the fiduciary disregarded and disobeyed the decrees of the court; and now he seeks to escape his adjudged personal liability, claiming to have acted in "perfect good faith"—in setting his own judgment above the wisdom and authority of the chancery court, who had jurisdiction over him and the trust estate, and, in defiance of its decrees, keeping the large fund in the bank, in which he was interested as a large stockholder, of which he was the president, and from which he was a large borrower. It appears, from his own testimony, that on the 1st day of August, 1884, he loaned to the cashier of the bank and himself $12,741 of the trust fund, without any warrant or authority whatever; and that, on the 6th day of December, 1884, he bought one hundred and fifty-four shares of stock of the Norfolk and Ocean View Railroad Company from himself, at par; which transactions were never discovered nor reported to the court until after the failure of the bank. Although he was the president of the bank, having his office at the bank,

he only occasionally made a cursory examination of the books of the bank, and although he knew that the cashier of the bank, Bain, made loans to Bain & Brother (a firm of which the cashier was a member), he was entirely ignorant of the extent of such loans or of the character and sufficiency of the securities, if any, whatever.

The only reason given by the appellant, John B. Whitehead, for keeping these large amounts in this bank, of which he was the president, and in which he was so largely interested, is, that *he thought this a better investment than that which the beneficiaries preferred* and *which the court had ordered.* If the court had ever been informed of his failure to obey its decrees, and he had assigned the foregoing reason for his neglect or defiance of its authority, he would have been in open contempt; and now, surely, when the trust estate has been lost, by reason of his failure to obey the decrees of the court, it is utterly insufficient to relieve him from a responsibility which he deliberately and contumaciously assumed. When a court, having competent and actual jurisdiction of the fund and the fiduciary, has instructed or authorized a particular investment, it is the imperative duty of the fiduciary to obey, and to strictly conform; and for loss occasioned by his failure, neglect or disobedience to make the investment indicated by the court, the fiduciary is personally responsible.

Particular inquiry may fail to disclose to an outsider the true condition of a bank reputed to be solvent; but John B. Whitehead cannot be heard to plead ignorance of the financial condition and management of a bank of which he was president, with daily and hourly opportunities and duty to look and see and inform himself, and in which he kept a large trust estate, in open defiance of the express directions of the court, and whose cashier, he was apprised, was borrowing money from it, and lending money in unknown amounts to a firm of which that cashier was a member. While he was depositing the trust funds in the bank, he was himself a large borrower from the bank;

and at the time the bank failed, he was indebted individually, and jointly with others, in the sum of $230,320.90. He cannot be allowed now to plead his own failure to make inspection and observation which it was his duty to make, both as president of the bank and as a fiduciary with a vast trust estate in the bank, and which he had every opportunity to make. A fiduciary is required to act in good faith, and "with the same prudence and discretion that a prudent man is accustomed to exercise in his own affairs." *Douglas* v. *Stephenson's Ex'or, &c.,* 75 Va. 749 ; *Leake's Ex'or* v. *Leake, &c.,* 75 Va. 800. The appellant need not to have taken the slightest risk; and he was relieved even of the labor of seeking investments. The object of the suit was to have the funds of the estate invested in United States bonds. The beneficiaries had asked it, and the court had so decreed ; and the record does not disclose any reasonable or legal excuse for John B. Whitehead's failure to respect the wishes of the *cestui que trusts,* and the expressed will of the court. The record is full of evidence of the want of due care and of open disregard of duty by John B. Whitehead in the management of this trust; and the court below was right in holding that, independently of the inferences to be drawn from the fact of his enormous indebtedness to the bank individually and jointly with the cashier and others, the appellant is liable for the amount deposited and lost in the bank.

When the aid of the court has been invoked and freely and positively given, and the appellant deliberately disregarded and disobeyed the decrees of the court upon the ground or assumption that the policy of the court was, *in his judgment,* unwise, there is no legal or equitable ground for him to claim excuse or immunity from the consequences of his own unwarranted action, resulting in the loss of the trust estate committed to his legal and moral responsibility.

The only other error assigned is, that the court erred in not allowing the appellant five per cent. commission "on all receipts," etc. An examination of the record shows that the

appellant has been allowed a commission of five per cent. upon moneys received by him; which commissions, together with the sum of $3,000 bequeathed to him by the will, make his compensation, received for his services up to the date of his resignation as executor and trustee and special commissioner, amount to $15,026.48. Not content with this, and the allowance of all expenses incurred by him beside, he claimed to be allowed, in addition, five per cent. upon the assets turned over by him to the curator under the decree of the court of April 27th, 1885, which amounted to $10,295.87 more. The court allowed him *three* per cent. commissions upon the par value of the assets delivered by him to the curator, amounting to $7,634.44, making his total compensation $22,660.92. He now demurs and claims that instead of *three* per cent., he should have been allowed *five.*

The error which the court committed was to the prejudice of the appellees and not to the prejudice of the appellant; and they ask this court to correct the error under the ninth rule of this court, and to disallow the appellant any commissions whatever upon the assets turned over by him to the curator.

There is no law which prescribes what commissions shall be allowed an executor, trustee or other fiduciary. The allowance or refusal of commissions rests in the sound discretion of the court under the circumstances of the case. *Boyd* v. *Oglesby*, 23 Gratt. 689; *Lovett* v. *Thomas*, 81 Va. (Hansbrough) 256.

The extent of the loss which will be sustained by the disregard of the duties incumbent upon the trustee, is not yet fully ascertained. The receiver of the broken bank refuses to pay the dividend due to the estate, upon the ground that he claims that the estate is liable to the bank on account of the money withdrawn from it by the executor and trustee, within ten days of its failure, for the purpose of paying the note given by him to the National Bank of the Republic for the money borrowed from it by the appellant with which to purchase United States Bonds, instead of withdrawing from the trust estate fund on deposit to his credit in the Exchange National Bank for that

purpose, as ordered by the court to do. No explanation is given, although the appellant himself was examined as a witness, why it was that, instead of drawing the money from deposit to his credit in the bank with which to purchase the bonds, he borrowed it—$48,944—from a bank in New York, and permitted the trust fund to remain in the bank and perish with its failure, nearly six months thereafter. (See *Asberry's Adm'r* v. *Asberry, &c.,* 33 Gratt. 469 ; *Boyd's Ex'ors* v. *Boyd's Heirs,* 3 Gratt. 125.)

We are of opinion to affirm the decrees complained of.

HINTON, J., concurred in the opinion and decree, except as to the allowance of three per cent. to the personal representative on the securities turned over to his successor. He does not regard this as a proper case for such allowance.

DECREES AFFIRMED.