THOMAS KELL BRADFORD *vs.* THOMAS MAC-
KENZIE, Committee.

*Allowance of Counsel Fees for Preserving a Lunatic's Estate—
Nemo est Hæres Viventis.*

Appeal from an order of the Circuit Court for Baltimore
County (Fowler, C. J., Burke, J.) *Affirmed.*

Elizabeth Bradford, who was committee of her lunatic
son, Charles H. Bradford, desiring to be relieved of her
office, filed through her counsel, Messrs. Findlay and Mac-
kenzie, a petition in the lunacy proceeding pending in the
Circuit Court for Baltimore County, asking to be relieved.
After proper proceedings had upon her petition an account
was stated between her and the lunatic's estate and an order
was passed on July the 9th, 1893, removing her and ap-
pointing Thomas Mackenzie committee in her stead. The
new committee qualified and the lunatic's estate, consisting
of $6,238.36 in cash, was paid to him. For the professional
services rendered by Messrs. Findlay and Mackenzie in
effecting this change of committee, a counsel fee of $100
was allowed them on June 14th, 1893. On March 31st,
1897, the same counsel were allowed a fee of $150 for cur-
rent legal services rendered the lunatic's estate during the
four years prior to the date of the allowance. Each of these
two counsel fees was allowed by an order of Court passed
upon a petition, to which was appended a certificate of two
reputable members of the bar that the fee asked for was a
reasonable one for the services rendered, and each fee
formed an item of an auditor's account which was first rati-
fied *nisi,* and in the absence of exceptions was finally ratified
in due course.

On July 13th, 1896, Mr. Mackenzie, as committee, filed
a petition under oath setting forth that he had prior thereto
made an agreement, subject to the ratification of the Court,
with John V. L. Findlay, to pay him, in consideration of ser-
vices to be rendered by him in prosecuting the claim before
the Legislature of Maryland, one-fifth of whatever sum the

Legislature would appropriate for the benefit of the lunatic, as one of the children of the late Gov. Augustus W. Bradford, for the destruction, in 1864, of his residence and its contents. The petition also averred that the Legislature had made an appropriation of $30,000, of which $4,285.71 was the share of the lunatic as one of the seven children of Governor Bradford; and that Mr. Findlay's one-fifth share of the lunatic's portion would amount to $857.14. It further stated that the services rendered by Mr. Findlay in prosecuting the claim before the Legislature had been valuable and effective and that his charge therefor was a reasonable one, and prayed for authority to pay him the fee as agreed upon. On this petition an order was passed by the Court on July 13th, 1896, authorizing the committee to pay to Mr. Findlay the $857.14. The money was paid to him and the committee was allowed credit for the amount so paid in the next auditor's account, which was finally ratified in due course on April 24th, 1897. On July 8th, 1898, the appellant filed in the lunacy case a petition, not as the next friend of the lunatic or on his behalf, but on his own behalf, alleging that he was one of the next of kin and heirs at law of the lunatic, and that the fee of $100 allowed to Mess. Findlay and Mackenzie was excessive ; that the allowance to them of the fee of $150 was erroneous, and that the allowance of the $857.14 to Mr. Findlay was wholly unwarranted and fraudulent. The prayer of the petition was that the several auditor's accounts in which the allowance of these fees had been ratified be reopened and the fee of $100 be reduced to $50, and the other two fees be entirely disallowed.

The Court said : " The grounds of the charges made in the petition were in substance, as therein stated, that no adequate services had been rendered for the first-mentioned two fees, and that Mr. Findlay had been of no service in procuring the Legislature to make the grant to the heirs of Governor Bradford, but had been an obstacle in the way of its success. The charge of fraud in reference to the allowance of the $857.14 to Mr. Findlay was supported by the allegation

that prior to the procuring by Mr. Mackenzie of the order of Court to pay the $857.14, the petitioner had written to him a letter protesting against any payment to Mr. Findlay, and that Mr. Mackenzie had not informed the Court of that fact when applying for authority to make the payment. Mr. Mackenzie filed an answer under oath to the petition, denying that the fees allowed were excessive, unreasonable or fraudulent and relying upon the authority of the several orders of Court for their payment. The petitioner in that condition of the pleadings offered no testimony in support of the allegations of his petition, but had the case set for hearing upon petition and answer, and the Court, upon the hearing, by its order of July 8th, 1898, dismissed the petition, and from that order this appeal was taken.

We think the Court below properly dismissed this petition. The petition, in stating the title of the petitioner to apply to the Court in this case for relief, avers that he is one of the heirs at law and next of kin of the lunatic, who is still living. It is well settled in Maryland, that no one professing to be an heir of a living person, not even if he be the child of such person, can claim a right or maintain a suit in respect to the property of that person while his interest in such property is merely in expectancy, depending upon a future inheritance that by possibility may never occur. "The principle is, both at law and in equity, that no one is entitled to be recognized as heir until the death of the ancestor or the person from whom the descent may be cast, and the fact that such ancestor may be alleged and admitted to be *non compos mentis*, or otherwise incapable of managing his estate, makes no exception to the general principle." *Sellman* v. *Sellman*, 63 Md. 522–523. This proposition is asserted in the strongest and most unqualified terms in *Sellman's case* and in the authorities and text-books there cited. The appellant had, therefore, no standing in his own right to file his petition or to maintain the claim which it sets up.

If, however, the petitioner had made out a *prima facie* case of fraud or imposition on the part of the committee upon the lunatic or his estate, the Court, in view of the help-

lessness of the lunatic, would *sua sponte* have come to his relief, but no such situation is presented by the record before us.  Each one of the fees now objected to was first allowed by a separate order of Court passed upon a petition setting out the services rendered by the counsel, and it was subsequently made an item of an auditor's account which remained in Court after its ratification *nisi* subject to exception for the customary period before it was finally ratified. The reasonableness of each of the two smaller fees was certified to by two reputable members of the bar, and the larger fee was allowed upon the production of a contract for professional services in the nature of the recovery of the lunatic's estate.  The contract was not upon its face unreasonable, and the committee, in his sworn petition for authority to pay this fee and in his answer under oath to the appellant's petition, avers that the services called for by the contract had in fact been rendered and had proven valuable and effective, and that a precisely similar contract had been made with Mr. Findlay by all others of the seven children of Governor Bradford, except the appellant and his brother, Augustus, and that the children who had made the contract with Mr. Findlay had all paid him the amount of compensation called for by it.   In *Colvin's case*, 4 Md. Chy. 130, it is determined that fees paid for legal services rendered to the committee in the discharge of his duty as such, in defending and protecting the estate of the lunatic, are proper allowances.   The fees in controversy in the present case come within the principle laid down in *Colvin's case*, and having been regularly allowed by the Court in the manner hereinbefore mentioned, they must, to say the least of them, be treated *prima facie* as proper allowances.   The order appealed from will be affirmed with costs."

Opinion by SCHMUCKER, J., filed June 21st, 1899.

*Joseph Cooper Boyd*, for the appellant.   *John V. L. Findlay*, for the appellee.