# Staunton

## Lake and Others v. Hope, Committee, and Lake and Others v. Hope, Committee and Others.

### September 7, 1914.

1. Insane Persons—*Committee—Sale of Real Estate.*—The committee of a lunatic has no power except as prescribed by statute to dispose of the real estate of a lunatic. By adopting the method prescribed by section 1793 and following of the Code (1904), and in that way alone, can the committee, even when aided by the court, dispose of real estate.

2. Insane Persons—*Committee—Corpus of Personal Estate—Leave of Court.*—While the court has supervision of the expenditures made by the committee of a lunatic, it cannot be considered malfeasance in office for a committee to trench upon the corpus of the personal estate to the extent that it may be necessary to the maintenance of the lunatic and of his family, if any, without first obtaining permission from the court. He may expend the corpus of the personal estate in his discretion, subject only to the future confirmation of his reports by the court, which should follow if the expenditures were *bona fide* and reasonably necessary and proper under all the circumstances of the case.

3. Insane Persons—*Committee—Compensation—Case at Bar.*—The fixing the amount of compensation that the committee should receive for his services out of the estate of a lunatic rests in the sound discretion of the court under all the circumstances of the case. Considering the attention the committee, in the case at bar, gave to the mental and physical welfare of the lunatic, and the large estate to be looked after and cared for, the allowance to the committee made by the court below was in every way fair and reasonable.

4. Insane Persons—*Committee—Allowances to Children—Appeal and Error.*—Where the continuance by the committee of an insane person of a weekly allowance formerly made by the lunatic to each of his adult children trenched upon the corpus of his per-

sonal estate, this court cannot say that the action of the trial court in directing its discontinuance was not justified.

5. INSANE PERSONS—*Committee's Duty to—Recreations—Luxuries.*— The paramount duty of the committee of a lunatic is to attend to his wants and comforts, and to furnish him so far as the funds in his hands will allow, with not only all the necessaries of life, but all the proper recreation and amusements consistent with his former habit of living. The care, health and comfort of the lunatic alone are to be considered, and this without reference to the interests of the next of kin, heirs at law and expectants. In the case at bar, the purchase and upkeep of an automobile and a boat, the expense of an extended trip to Florida and of proper attendants on the trip, and the employment of some one to collect the rents of the estate, are all upheld as proper expenditures under the circumstances of the case.

6. INSANE PERSONS—*Committee—Deed by Lunatic—Ratification—Suit to Set Aside.*—The failure of the committee of a lunatic to bring suit to set aside a deed made by the lunatic to one of his sons, of his home place, four months before he was adjudged insane, is not malfeasance in office justifying his removal. No ratification of the conveyance by the committee could effect the rights of the other children. In the case at bar, there was no evidence of the incompetency of the grantor at the time the deed was made, no request made to bring such a suit until after notice was given to remove the committee, and the court below directed the committee not to bring the suit.

7. INSANE PERSONS—*Committee—Appointment—Removal—Statutory Provisions.*—The statutes of this State make ample provision for the appointment and removal of committees of lunatics, the settlement of their accounts, restraining their expenditures and the like, and there is no necessity for a suit in equity by next friend, to accomplish these results.

8. INSANE PERSONS—*Suit by Next Friend—Leave of Court—Demurrer.* A bill by a lunatic, suing by his next friend, is bad on demurrer, if it fails to aver that the next friend appears as such by the appointment or leave of the court. The fact that the bill avers that the next friend is a child of the lunatic does not change the rule, as the court considers only the situation of the lunatic, and the next of kin are not considered as having any interest in his property.

Error to a judgment of the Circuit Court of Elizabeth City county in a proceeding by motion to remove a committee. Judgment for defendant. Petitioners assign error.

*Affirmed.*

Appeal from a decree of the Circuit Court of Elizabeth City county. Decree for defendant. Complainants appeal.

*Affirmed.*

The opinion states the case.

*S. Gordon Cumming, J. Winston Read* and *Meredith & Cocke,* for the plaintiffs in error and the appellants. ·

*R. M. Lett* and *Sidney J. Dudley,* for the defendant in error and the appellee.

CARDWELL, J., delivered the opinion of the court.

These causes were argued and submitted together here and will be disposed of in this opinion in the order named.

The writ of error in the first-named case brings under review three orders entered by the circuit court in a proceeding under the statute to remove Dr. J. Wilton Hope as committee of John B. Lake, Sr., a lunatic, and to substitute another person in his place and stead, because of incompetency and lack of care and prudence on the part of Dr. Hope as committee, and his unwarranted extravagance in managing the estate of his ward committed to his charge.

It appears that John B. Lake, Sr., a native of Elizabeth City county, where he had resided continually all of his life, was a man of extraordinary business acumen, and

44

had by his economy and careful investments accumulated a considerable estate, both real and personal, aggragating in value several hundred thousand dollars, the larger part of his holdings being real estate, and a good part of that vacant and unimproved. For some time prior to December 23, 1909, Mr. Lake, whose age at that date was about seventy years, was in a very weak condition mentally and physically, his physician, Dr. Hope, who is now his committee, attributing this condition to over-indulgence in the use of liquor to an extent that caused alcoholic neuritis and dementia. Mr. Lake's wife had died some two years previous to the date just mentioned, and he had seven children, all of whom were married and resided elsewhere than with him, except his son, George A. Lake, who with his wife· retained his residence with his father. Not only was Mr. Lake for years prior to his break-down unusually liberal with all his children, making them regular and equal weekly allowances from the income of his estate, but he had given to each of them who had not continued to reside with him after their marriage, a house in which they respectively lived, and on the 6th day of August, 1909, about four months prior to the date on which he was adjudged a lunatic, he executed a conveyance of the property which had been and was then his home to his son and youngest child, George A. Lake, reserving to himself a life estate therein. It was upon the petition of plaintiffs in error, filed in November, 1909, that the circuit court of the county of Elizabeth City was asked to appoint "some discreet and proper person as committee for the person and property of said John E. Lake, Sr." This petition was taken under consideration by the court, with the result that on the 23rd day of December, 1909, it ruled that a committee of the person and estate of Mr. Lake should be appointed, and over the objection of the petitioners, ap-

pointed Dr. Hope, who had been the physician of Mr. Lake and of two of his children for years, as such committee. The petitioners conceded the professional attainments of Dr. Hope, and rested their objection to his appointment as committee solely upon the ground that he had neither the time nor the business qualifications essential to the management of such an estate as their father's.

A male nurse was employed by the committee for Mr. Lake, whose custody was delegated to his son George, with whom he had been living, and to whom the father was greatly attached, and the business affairs of Mr. Lake were delegated to his son, Frank.

In June, 1910, but a few months after his appointment as committee, some of the children of Mr. Lake, upon notice, moved the court to remove Dr. Hope from his office as committee, the chief grounds alleged for his removal being, (1) that Dr. Hope was a physician, in full practice, and the pursuit of his profession occupied too much of his time to attend to this office of committee; (2) that he had not, up to that time, filed a sufficient inventory of the property, real and personal, belonging to Mr. Lake; (3) that he was partial among the children of his ward; (4) that he had failed to institute a suit to set aside the deed made by Mr. Lake to his son George in August, 1909; (5) that he had failed to call in the services of a specialist to attend Mr. Lake; and (6) that the estate of Mr. Lake was being generally badly mismanaged by his committee. Dr. Hope promptly filed his answer to this motion and no further action thereon was taken for a long period of time, but in due course the committee filed a report of his transactions for the year 1910, and S. J. Dudley, who was commissioner of accounts for the county, made settlement thereof, examined the vouchers of the committee, and made report

thereon to the court, which report was in due course confirmed.

With the matters thus closed for the year 1910 no further action was taken or proceedings had towards the removal of Dr. Hope as committee, until February 7, 1912, on which date the committee filed a report of his transactions for the year 1911, to which report certain exceptions were filed by four of the children of Mr. Lake who were seeking to have Dr. Hope removed as committee, and upon the filing of these exceptions the court referred the report, together with the exceptions thereto, to Thos. L. Sclater, one of its commissioners in chancery, who was directed to act thereon in the capacity of commissioner of accounts.

Evidence was taken before Commissoner Sclater and returned with his report to court. This report stated, (a) that after careful examination the commissioner had found accurate accounts kept by the committee of all receipts and expenditures, and found vouchers in his possession for all moneys expended, and (b) that due diligence had been used to keep the property rented, to collect the rents and look after the repairs; but the commissioner also reported that the committee had no right to use any part of the corpus of the personal estate of his ward without leave of the court first obtained; and further that he (the commissioner) believed the rents of the real estate could be collected upon a five *per cent.* commission basis.

To the two latter sections of the report, Dr. Hope excepted, upon the grounds. (1) that a committee did have the right, under section 1702 of the Code, to expend when necessary part of the corpus of the personal estate of his ward without the leave of the court first obtained; and (2) that although the rents might be collected upon a five *per cent.* commission basis, as stated in the report,

it was a wise and judicious expenditure of money to have the rental of the property of Mr. Lake supervised, managed and controlled by an agent who should have that as his sole interest, etc.

In April, 1912, Mr. Lake petitioned the court, under the statute, to be declared of sound mind, but upon a full hearing, at which Dr. Hope testified in favor of his discharge, and which was earnestly opposed by the petitioners for Dr. Hope's removal as committee, the court denied the prayer of the petition and ordered that Mr. Lake, until otherwise ordered, continue in the hands and under the control of his committee, etc. On October 12 following, the four children of Mr. Lake who had in June, 1910, petitioned for the removal of Dr. Hope from his office as committee, again moved the court to discharge him, setting up as grounds for their motion, in addition to those relied on to sustain their original motion made more than two years before and which were reiterated, that the services of Dr. Hope as a physician were no longer necessary; that a considerable portion of the corpus of the estate of his ward had been spent, and that suit had not been brought by the committee to set aside the deed, made by his ward before he was adjudged a lunatic, to his son.

To this motion Dr. Hope waived his right to notice under the statute, and promptly answered, reiterating the matters set up in his former answer to the motion for his removal, and adding such additional matters of defense as were deemed proper. Upon a hearing on these proceedings the court, on October 26, 1912, entered its order confirming the report of Dr. Hope of his transactions as committee for the year 1911, upon the ground as stated in this order as follows: "The court being satisfied from the evidence and the examination of the report that the expenditures therein reported, both out of

the income, as also out of the corpus of the personal estate, were necessary in the proper maintenance of the said John B. Leake, Sr., and his family, much of the larger expenditures being, in fact, made in pursuance of the personal directions of this court, doth confirm the said report and each and all of the items therein contained,"  . .

This order, in which the court also refused to remove Dr. Hope from his office, reserved for further consideration the amount of his future remuneration as committee and an allowance for an employee, if any were to be employed, in the collection of rents, clerical work and attention to the estate of Mr. Lake.

At the next term of the court the following order was entered: "The court being of the opinion that the allowance of $100 per month heretofore allowed the said committee by this court is right and proper, doth continue the same until January 1, 1913, but that from and after January 1, 1913, the sum of $75.00 per month is a reasonable and proper allowance." By this order the services of Frank H. Lake in the collection of rents, clerical work and attention to the estate of Mr. Lake were to be retained, but at a salary reduced from $75.00 to $65.00 per month. At a later day of its same term, the court entered its order of December 12, 1912, refusing "for the present" to direct the committee to institute proceedings to set aside and annul the deed from Mr. Lake to his son George, above referred to, and to this order and the two preceding orders of the court just mentioned, the four children of Mr. Lake, viz: John B. Lake, Jr., Louise L. Collier, Fannie L. Hyatt and Lucile L. Richardson, who had sought the removal of Dr. Hope as committee, excepted and applied for and obtained this writ of error.

The petition for the writ of error is made up largely of

what is called a statement of the facts of the case and complaint of the conduct of the committee, but the only matter thereby submitted for consideration by this court is whether the circuit court erred in refusing to remove Dr. Hope as committee, "and substituting in his place some impartial and unprejudiced person who would economically and judicially administer the estate and be impartial as between these petitioners and their brothers, Frank H. and George H. Lake, in seeing their father."

With respect to the complaint that defendant in error, in discharge of the duties of his office as committee, had been partial as between plaintiffs in error and their brothers, Frank and George, in seeing their father, we deem it only necessary to say that a careful examination of the record fails to disclose any just ground for this complaint, but does show that Mr. Lake was not confined in his movements, and was allowed to go out as he wished on account of his health; that from his appointment as committee in December, 1909, until April, 1912, defendant in error was not advised of any complaint that some of Mr. Lake's children had not been permittéd to visit him freely, as he (Dr. Hope) had every reason to believe they could do, and that upon being advised of this complaint he took such steps as he could to remove this cause of complaint, and also brought the matter to the attention of the learned judge under whose supervision and control he was acting as committee, who in person sought to aid the committee in removing any cause for complaint on the part of any of the children of Mr. Lake that they could not visit him freely and under as agreeable conditions as were possible. The fact is the record shows that whatever unpleasantness some of the children of Mr. Lake may have encountered in their visits to him was more readily to be traced to the temperament and disposition of his children towards each

other than to any misconduct or neglect of duty on the part of the committee.

The remaining question is whether or not the lower court erred in refusing to remove defendant in error from his office of committee because of nonfeasance and malfeasance with respect to the care of Mr. Lake and the management of his estate. The points in dispute in this connection are: *First,* What estate may a committee use in the support and maintenance of the lunatic and his family without first obtaining the sanction of the court having jurisdiction over the estate? *Second,* Were the expenditures made by the committee in this case proper? and, *Third,* Was the committee guilty of nonfeasance in office in refusing to institute a suit having for its object the annulling of the deed made by Mr. Lake, conveying to his son, George, his residence, before he was adjudged a lunatic?

The question, what control has the committee of a lunatic over the corpus of the estate, can have reference only to personal property, since the succeeding sections to section 1702 of the Code, which defines and fixes the control of the committee over the estate of the lunatic and prescribes his duties and powers, are final in their mandate, and specific in the procedure to be adopted with respect to the disposal of the real estate or any part thereof. By adopting the method prescribed in section 1703 and succeeding sections, and in that way alone, can the committee, even when aided by the court, dispose of real estate. In this case no real estate has been disposd of or trenched upon by the committee. Section 1702 of the Code is as follows: "The committee of an insane person shall be entitled to the custody and control of his person (when he resides in the State, and is not confined in a hospital or jail); shall take possession of his estate, and may sue and be sued in respect thereto, and

for the recovery of debts due to or from the insane person. He shall take care of and preserve such estate and manage it to the best advantage; shall apply the personal estate, or so much as may be necessary, to the payment of the debts of such insane person, and the rents and profits of the residue of his estate, real and personal, and the residue of the personal estate, or so much as may be necessary, to the maintenance of such insane person and of his family, if any; and shall surrender the estate, or so much as he may be accountable for, to such insane person, if he shall be restored to sanity, or the real estate to his heirs or devisees, and the personal estate to his executors or administrators, in case of his death without having been restored to sanity.''

This court in *Hurt* v. *Bristol,* 104 Va. 213, 51 S. E. 223, 7 Ann. Cas. 679, refers to this section of the Code as defining the duties and powers of a committee, and says that the measure of his control over the personal estate of the lunatic is thereby fixed.

This statute plainly confers upon the committee authority to apply the personal estate, or so much thereof as may be necessary, to the payment of the debts of the lunatic, and the rents and profits of the residue of his estate, real and personal, *and the residue of his personal estate, or so much as may be necessary* (italics ours), to the maintenance of such insane person and of his family, if any. While the court has supervision of the expenditures, it cannot be considered malfeasance in office for a committee to trench upon the corpus of the personal estate to the extent that it may be necessary to the maintenance of the lunatic and of his family, if any, without first obtaining permission from the court. He may expend the corpus of the personal estate in his discretion, subject only to the future confirmation of his reports by the court, which should follow if the expendi-

tures were *bona fide* and reasonably necessary and proper under all the circumstances of the case.

The accounts returned with the report of the committee in this case for the year 1910 and confirmed by the court are not a part of the record, so that our consideration will necessarily be limited to the detailed report of the committee for the year 1911, which is a part of the record.

During the year 1911 $14,871.03 was paid out by the committee, and we cannot do more in an opinion of reasonable length than give consideration to those items of which special complaint is made. The first of these complaints is that the compensation allowed Dr. Hope for his services as committee was excessive. In view of the fact that defendant in error had been the family physician of Mr. Lake long prior to his being adjudged a lunatic, familiar with his ailments, and in every way qualified to treat him, his selection as the committee of Mr. Lake was, as it appears to us, wise and humane. It is not denied that when defendant in error entered upon his duties as committee his ward was a very sick man, suffering from alcoholic neuritis and some cerebral disorder due to the same cause. He was a helpless invalid— could not sit up in bed, could not lift a glass of water to his mouth, could not walk a step, could not turn over in bed without the assistance of some proper person, and absolutely without any assistance to himself. "He required the assistance of a nurse, just like a baby would have to have, through calls of nature." He was in the condition mentally that he was always in a state of dread, thinking that something was happening to him, and was so utterly helpless that it was necessary for some one to clothe and feed him. Such was the serious illness of Mr. Lake up to June, 1910, when plaintiffs in error complained to the court that the committee had failed

or refused to call in the services of a specialist on the disease or diseases with which Mr. Lake was afflicted. In the spring of 1912, however, Mr. Lake had, under his committee's care, so much improved in physical strength and vigor that he could walk wherever he pleased, and his mental condition was practically that of a sane person who could act for himself in the management of his own affairs, "unless subjected to great and unnecessary mental strain;" but when all of the evidence given as to Mr. Lake's condition at that time is considered, the circuit court was well warranted in its conclusion that it was to the best interest of Mr. Lake that he be "continued, until otherwise ordered, in the hands of his committee."

Defendant in error took nothing from Mr. Lake's estate whatever, during the year 1910, as remuneration for his services, but waited until the year 1911, when the court, with full knowledge of all that was transpiring, itself fixed the remuneration for the services of the committee at $100 per month, which allowance was continued to the end of the year 1912, when it was reduced to $75.00 per month. We find no decision by this court that the circuit court was without authority to make this monthly allowance to the committee. The fixing of the amount of compensation that the committee should receive for his services out of the estate of his ward rested in the sound discretion of the court under all the circumstances of the case. *Whitehead* v. *Whitehead,* 85 Va. 878, 9 S. E. 10.

In *May* v. *May,* 109 Mass. 257, the court in passing upon the account of a guardian for a lunatic, wherein appeared a charge of five *per cent.* on the gross amount collected, and besides this commission a charge of $100 per month for personal services to the lunatic by the guardian, held that the charge of $100 per month for the personal services of the guardian in the personal charge

of the ward, although apparently somewhat large, was justified by the evidence, the opinion of the court saying: ''This item, as we understand it, does not apply to the services of the guardian in the management of the property. The evidence satisfies us that the visits of the guardian to the ward, which were very frequent and occupied a large portion of the guardian's time, were of great benefit and advantage to the ward, have greatly improved his condition, and are not overcharged in the guardian's account. . . . Any specific services, not included in the ordinary range of the guardian's duties, may be charged in his account, and it will be the duty of the judge of probate to make such reasonable allowance for them as their importance and difficulty might require. The true principle would be, adequate reward according to the circumstances of the case.''

The reasoning of the court in that case and the principle of law applied to the facts are peculiarly applicable to the facts of this case. Mr. Lake was a man owning an estate worth, as is conceded, over a quarter of a million dollars, and the court, familiar with his condition, exercising a judicial discretion, deemed it wise to appoint for him a committee who would give somewhat more consideration to the personal, mental and physical welfare of the insane man than was usually to be expected of a committee, and allowed the committee, a skilled physician of large experience, $100 per month for his services as such physician, and also for his care of the lunatic's estate, and the evidence in the record abundantly shows the soundness of this exercise of the court's discretion, but utterly fails to show that the allowance made to the committee for his services was anything else than fair and reasonable under all the circumstances of the case.

Complaint is also made by plaintiffs in error that the

court below approved the action of the committee in cutting off certain weekly allowances made by Mr. Lake to his children prior to his being adjudged a lunatic. All of Mr. Lake's children were married, and these weekly payments of $10 to each of them were continued by his committee under the court's order of October 13, 1910, but when the contention was made that a committee had no power or authority to expend any part of the corpus of his ward's personal estate, and that too much money was being spent by the committee, the court, in 1912, directed him to omit these payments. While it was doubtless inconvenient to the children of Mr. Lake to have these weekly payments to them cut off, we could not say that the court, under the circumstances shown in the record, was not justified in directing this to be done.

Of the $14,871.03 paid out by the committee during the year 1911, the allowance to the children for the year amounted to $3,640, and the items of taxes, insurance and repairs to $2,466.13, making a total of $6,106.13, which about consumed the gross rents received from the real estate; .and we shall be content with referring to certain of the other items of disbursements made by the committee during the year 1911, upon which stress is laid in the petition for this writ of error.

The first of these items is the expense of purchase, maintenance and upkeep of an automobile and a boat for the use of Mr. Lake. It appears that Mr. Lake, before his illness, owned and enjoyed an automobile, which was practically his only source of outside pleasure. This machine gave out and his committee disposed of it in an exchange for a new one, which exchange involved an out-lay in money of the sum of $1,150 and the maintenance and upkeep of it and the boat for the year seems to have cost $350.27, making a total of $1,500.27, Mr. Lake's son, George, acting as chauffeur.

For a man of Mr. Lake's worth, incapable of any other recreation or pastime, this item of expense for his comfort and pleasure could not be reasonably considered extravagant or wasteful.

Other items of expense in the accounts of the committee emphasized consist of a trip taken by Mr. Lake of several months to a winter resort in Florida, during the winter of 1910-11, and another trip to Richmond; and complaint is also made that his son George and wife accompanied him on his trip to Florida. No nurse was sent with Mr. Lake, but his son George and wife, who accompanied him, nursed him without any other expense than their maintenance, and the $30.00 per month that the son had theretofore been receiving for his care and attention to his father while living in the house with him, about which payment to the son no complaint had been made by any of the other children. It is not denied that Mr. Lake received great benefit from his winter sojourn in the South, and on the contrary it is clearly shown that it was after his return from that trip, more than a year after his affliction had caused his being put in charge of a committee, that he became substantially convalescent.

Complaint is also made that defendant in error retained Frank Lake, another son of his ward, in the management of the estate—that is, to collect the rents thereof as he had theretofore done for his father.

It not only appears from the proof in the case that the expenditures made by the committee, as well those out of the corpus of the personal estate as those out of the income, were necessary in the proper maintenance of Mr. Lake and his family, and in keeping with Mr. Lake's customs and habits when he was in control of his estate, but the learned and painstaking judge below has taken occasion, by his order made a part of the record, to state that much of the larger expenditures set forth in the re-

ports of the committee had been made in pursuance of the personal direction of the court.

It is very true, as contended by counsel for plaintiffs in erorr, that oral advice and conference between the committee and the judge of the court in no way protects either, but when it appears, as in this record, that both the court and committee were careful in the conduct and management of Mr. Lake's affairs, and in providing for his comfort and enjoyment of life, the burden is cast upon those complaining of the manner in which the committee has discharged his duties to prove that he has been guilty of nonfeasance or malfeasance in office.

The rule of conduct on the part of a committee of a lunatic is nowhere better stated than as follows: "The first and paramount rule in lunacy is to provide for the personal ease and comfort of the lunatic, and the maintenance is not limited like that of an infant to the income." 5 Bacon's Abr., p 12.

This is the rule to be gathered from the plain language and purport of our statute, sec. 1702, *supra*.

In re *Reed Knapp's Estate,* 18 Misc. Rep. 285, 41 N. Y. Supp. 156, the facts are very similar to those in the case here, and the court there held, "that it was the paramount duty of a committee of a lunatic to attend to his or her wants and comforts and to furnish him or her, so far as the funds in his hands will allow, with not only all the necessaries of life, but all the proper recreation and amusements consistent with his or her former habit of living. It is his duty to avail himself of medical advice and all other reasonable means that may tend to the restoration of the ward or amelioration of his or her condition, the care, health and comfort of the lunatic alone to be considered, and this without reference to the interests of the next of kin, heirs at law and expectants . . . The duties of committees and executors are so

different, the rules governing the conduct of one have but scant application to the duty of the other. The duties of committees are to the lunatic, of executors to creditors, heirs, legatees, etc."

The contention of plaintiffs in error that the committee in this case was guilty of nonfeasance in refusing to institute suit having for its object the annulling of the deed made by Mr. Lake to his son, George, four months before he was adjudged a lunatic, and for that reason the committee should have been removed from his office, is without merit. As observed, the court, by its order, directed that such a suit be not instituted by the committee, and it appears that no request was made of the committee by anyone before the institution of this proceeding to have him removed that such a suit be instituted by him, nor had he any reason to believe that the conveyance then brought into question was not satisfactory to the children of Mr. Lake, each of whom, except his son George, had been given by him a house in which they respectively then lived. The deed of his home place to his youngest son, George, with whom he was then and had been living, reserved to Mr. Lake, the grantor, a life estate therein, and we find no evidence in this record that would have warranted his committee, subsequently appointed, or the court that appointed him and had supervision of his actions, in the belief that Mr. Lake was mentally incompetent at the time to execute such a conveyance or to fully understand what he was doing. After the deed was made he continued to occupy the property as his home and as he had done theretofore. Not only was it clearly proven to the court when it refused to direct the committee to institute a suit attacking this deed, that Mr. Lake was daily improving in bodily health and mind, and might reasonably be expected to shortly be in condition to himself resume the control and

management of his estate, but the failure or refusal of his committee to attack the deed could not by any possibility affect the rights of his children between themselves to his estate should he die without being restored to sanity. In other words, no ratification on the part of the committee of the deed in question could affect the rights of the children between themselves to their father's real estate after his death.

"The guardian or committee cannot ratify the deed of the insane person under his guardianship, unless by order of the court appointing him, acting under its inherent or statutory authority, to make conveyances of the lunatic's property." 22 Cyc. p. 1174.

We are of opinion that the orders of the circuit court complained of in the petition for this writ of error are right and should be affirmed.

After the proceedings had been had in the first of these causes and which have been above reviewed, J. B. Lake, Jr., Louise Collier and Fannie Hyatt, three of the children of Jno. B. Lake, Sr., at the second September rules, 1913, of the Circuit Court of Elizabeth City county filed, as children and next friends of Mr. Lake, their bill on the equity side of the court against Dr. Hope, as committee of Mr. Lake, and the other four children of the latter or their representatives, the relief prayed being—

*First*: The removal of Dr. Hope as committee forthwith, or, in the alternative, an additional committee or receiver to be appointed to take charge of the estate of Mr. Lake:

*Second*: That a more detailed statement of the receipts and disbursements by the committee for the year 1912 be rendered by him: and

*Third*: That Mr. Lake be returned to the environments to which he was accustomed before being adjudged insane, and that complainants be permitted to visit him

as before he was so adjudicated, and without interference by any one whomsoever, including the committee.

The complainants style themselves as children and next friends of Mr. Lake, but nowhere in their bill do they claim that leave of the court had been theretofore obtained to institute such a suit on behalf of Mr. Lake, or allege any fact sufficient to obviate the necessity of such leave. They file as parts of their bill exhibits "A," "B" and "C"; "A" being the entire record of all the various proceedings on the common law side of the court for the removal of the committee; "B" being a certified copy of the committee's report covering the year 1910, which had been confirmed by the court in April, 1911; and "C" containing a summarized report of the committee for the year 1912. Such being the exhibits therewith, the bill but reiterates the charges of mismanagement, extravagance, carelessness and partiality on the part of the committee, every item of which, and with particularity in the utmost detail, had been heard in the various proceedings on the common law side of the court, for the removal of the committee, etc. No relief is prayed in this bill against the four children who are made nominal defendants thereto, and as a matter of course, with or without an answer or plea filed by them, the bill, so far as they were concerned, was dismissed.

The remaining defendant, Dr. Hope, as committee, demurred to and moved to dismiss the bill as to him also, the demurrer being upon the ground that the bill showed upon its face that leave of the court had not been obtained by the complainants to institute the suit as the next friends of Mr. Lake against his committee; and the motion to dismiss was upon the ground that the bill showed upon its face an adequate remedy at law, and that a court of equity was without judisdiction to grant the relief therein sought.

By its decree of October 20, 1913, the court sustained both the demurrer and the motion to dismiss the bill, to which decree this appeal was allowed the complainants.

Clearly it could not be and is not contended by counsel for appellants that it was sought under the allegations of their bill to have the court remove Dr. Hope from his office of committee, which is a matter that had been passed upon and finally disposed of in the proceedings on the law side of the court after a full and fair hearing in which appellants were plaintiffs; therefore, the real relief sought was the appointment of an additional committee or receiver to take charge of the estate of Mr. Lake.

As contended by counsel for appellee, ample provision is made in our statute and the procedure specifically provided, whereby any person interested in the estate of a lunatic may, for cause shown, have his committee removed, his accounts corrected, his expenditures restrained, and such relief granted as will assure the proper fulfilment by the committee of the duties of his office, without permitting self-constituted next friends to bring, at their discretion, suits with respect to the person or estate of the lunatic. Sec. 2687, Code 1904.

It is clear, says this court in *Bird's Committee v. Bird,* 62 Va. (21 Gratt.) 712, that when there is a committee, every suit respecting the person or estate of the lunatic must be instituted in his name; and the opinion in that case by Staples, J., further says: "In all such cases, or wherever interests of the committee clash with those of the lunatic, or where no committee has been appointed, the lunatic should be permitted to institute a suit in his or her own name with some responsible person named as next friend and approved by the court. This rule is a just and beneficent one, and has the sanction of a respectable and imposing weight of authority."

The rule thus broadly laid down in that case was sanctioned and amplified in the opinion of the court by Lewis, P., in *Hinton* v. *Bland's Admr.*, 81 Va. 591.

In *Palmer* v. *Sinnickson,* 59 N. J. Eq. 530, 46 Atl. 517, Vice-Chancellor Grey said: "In the case under consideration one of the complainants is stated to be a lunatic, who sues by her next friend, but there is no averment that the party who thus seeks to act for the lunatic has in any way been appointed her guardian, or that he has been admitted by any order of the court to appear as her next friend. In the absence of such a recital it cannot be assumed that such an authority has been conferred. The face of the bill, therefore, shows that one of the plaintiffs cannot maintain this suit. This may be taken advantage of by demurrer, and is fatal to the whole bill."

"The principle is, both at law and in equity, that no one is entitled to be recognized as heir until the death of the ancestor or the person from whom the descent may be cast; and the fact that such ancestor may be alleged and admitted to be *non compos mentis,* or otherwise incapable of managing his estate, makes no exception to the general principle." *Sellman* v. *Sellman,* 63 Md. 522, 523.

In *Tiffany* v. *Worthington,* 96 Iowa 560, 564, 65 N. W. p. 817, the opinion cites with approval *Hinton* v. *Bland's Admr., supra,* and says: "In *Covington* v. *Noftzger, supra,* it is said: A person suing as next friend has no authority to bind the lunatic or his estate. He is a mere volunteer, clothed with no authority from any court. He may be liable for costs, but he does not control the lunatic or his estate in any manner whatever; and it would be a dangerous rule to hold that such a person might, at his own will or discretion, come into court for the purpose of impeaching a transaction in which he has no interest, as a trustee or otherwise, and over which he

has no control. In *Dorsheimer* v. *Roorback, supra,* it is said: 'The rule is a wise one. It should never be permitted that any volunteer, who, by styling himself the next friend of an idiot, brings suit for him, should lose or jeopardize his rights.' . . . We are clearly of the opinion that the demurrer was properly sustained, and the judgment of the district court is affirmed.''

The averment in the case here, that the complainants are the children of Mr. Lake and that in justice to themselves they instituted this suit, does not obviate or impair the established rule of procedure and pleading to which we have just adverted; since the next of kin are not considered as having any interest whatever in the lunatic's property, and there being nothing for the court to consider in such cases, but the situation of the lunatic himself, always looking to the probability of his recovery, and never regarding the interest of the next of kin. 5 Bac. Abr., p. 16; *Bradford* v. *McKenzie,* 89 Md. 763, 43 Atl. 923.

Not only does the bill of appellants fail to show that leave of the court had been obtained by them to institute a suit as next friends of Mr. Lake against his committee, but it shows upon its face that if they had had such leave, they had an adequate remedy at law, and that a court of equity was without jurisdiction to grant the relief sought in their bill.

For the reasons stated the decree complained of is right and, therefore, has to be affirmed.

*Affirmed.*