# CIRCUIT COURT OF THE CITY OF NORFOLK

Haga et al.

v.

Patricia Blood
and Fidelity and
Deposit Co. of Maryland

June 29, 1999

Case No. (Chancery) CH98-1604

BY JUDGE JOSEPH A. LEAFE

The Defendants in this chancery matter have filed a demurrer to the Plaintiffs' Bill of Complaint. Oral argument was heard on February 23, 1999, and briefs were subsequently filed by both sides.

"When a motion for judgment or a bill of complaint contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand demurrer." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993) (citing*Hunter v. Burroughs*, 123 Va. 113, 129, 96 S.E. 360, 365 (1918)). Additionally:

> even though a motion for judgment or a bill of complaint may be imperfect, when it is drafted so that defendant cannot mistake the true nature of the claim, the trial court should overrule the demurrer; if a defendant desires more definite information, or a more specific statement of the grounds of the claim, the defendant should request the court to order the plaintiff to file a bill of particulars.

*Id.* (citing *Alexander v. Kuykendall*, 192 Va. 8, 14-15, 63 S.E.2d 746, 749-50 (1951)).

### Counts I and III

Count I seeks to surcharge and falsify the guardianship accountings. Patricia Blood was appointed guardian of her mother by order of this Court on December 1, 1989. Count III is an action on the surety bond for the guardianship.

All of the activities alleged in Count I relate to allegedly erroneous actions or omissions taken during the guardianship. The Complainants acknowledge that the guardianship ended at the death of Constance Casada.

The Respondents demur to these two counts of the complaint and assert that Complainants have no standing to try to surcharge and falsify the accounts of the guardian. The Complainants were listed as beneficiaries under the will.

In support of their demurrer, the Respondents cite *Lake v. Hope*, 116 Va. 687, 82 S.E. 738 (1914). There, the Supreme Court said:

> [W]herever interests of the committee clash with those of the lunatic, or where no committee has been appointed, the lunatic should be permitted to institute a suit in his or her own name with some responsible person *named as next friend and approved by the court.* This rule is a just and beneficent one, and has the sanction of a respectable and imposing weight of authority.

*Id.* at 707 (emphasis added) (citing *Bird's Committee v. Bird*, 62 Va. (21 Gratt.) 712 (1872)). The public policy for this doctrine was stated on the next page:

> A person suing as next friend has no authority to bind the lunatic or his estate. He is a mere volunteer, clothed with no authority from any court. He may be liable for costs, but he does not control the lunatic or his estate in any manner whatever; and it would be a dangerous rule to hold that such a person might, at his own will or discretion, come into court for the purpose of impeaching a transaction in which he has no interest, as a trustee or otherwise, and over which he has no control.

*Id.* at 708-09. Nowhere in the Bill of Complaint is it alleged that Complainants have leave of court to file this brief against the estate of Casada.

Although the *Lake* opinion addressed committees, this Court is satisfied that the Supreme Court's doctrine was meant to cover guardianships as well.

Further, as far back as 1849, the Supreme Court of Virginia reached a similar conclusion. As the Court pointed out in *Lemon v. Hansbarger*, 47 Va. (6 Gratt.) 301 (1849), a suit in the guardian's name, as opposed to the infant's name, would have to stop if the infant attained age or if the guardian died. This holding was affirmed three years later in *Sillings v. Bumgardner*, 50 Va. (9 Gratt.) 273 (1852). Therefore, for at least 150 years, the Supreme Court has required that the wards of guardians sue by next friend. Further, *Lake* explicitly required prior leave of court to do so.

The other potential obstacle to the applicability of *Lake* is cited by the Complainants: Mr. Lake was alive in that case, and Casada was no longer alive in the present case. The fact that Mr. Lake was still alive was significant because the sons would not become beneficiaries of the will until the death of the testator. In other words, the sons' legal interest in Mr. Lake's estate would not arise until after Mr. Lake's death. In the present case, the step-children Complainants do have an "interest" in the will as of the death of Casada. However, that circumstance does not change the holding with regard to the *guardianship time period*. The public policy that the Supreme Court discussed in *Lake* has to do with not allowing people without the proper authority to bring suit on behalf of someone else (i.e. the ward). This Court sees no reason to believe that this holding of the Supreme Court should be limited to the time before the ward's death. The danger in people falsely clothed with authority challenging guardians remains just as strong after death as before death.

This Court therefore concludes that the Complainants have improperly brought suit against the guardian and her surety. Counts I and III will be dismissed with prejudice.

## Count II

In Count II of the Bill of Complaint, Complainants seek to surcharge and falsify the estate accountings. Essentially the allegations can be put into five categories: the executrix failed in (1) not seeking payment of the note (from herself); (2) allowing the estate's value to decrease; (3) failing to timely pay taxes; (4) overpaying herself; (5) not paying rent.

The Respondent's[1] first argument is again that there is no standing: "Each of the claims raised in [Count II of] the Bill of Complaint relates to actions

---

[1] Since Count II applies only to Respondent Blood, the singular is used in this part of the opinion.

which the Complainants contend the *Guardian* should have taken, not the *Executrix* of the will." (Respondent Blood's Letter Brief, p. 4 (emphasis in original).) By the plain terms of the Bill of Complaint, however, the Complainants do allege that the actions (or failures to act) occurred under the executrix, not the guardian.

Thus, this Court finds that the Complainants do have proper standing to pursue a suit to surcharge and falsify against the executrix. *See Sillings, supra.* The second half of the question is whether the Bill of Complaint sufficiently alleges a cause of action.

Paragraph 9 of the Bill of Complaint alleges that the $10,000 loan was given on July 29, 1988, and required payments from Blood for the next thirty months. Although any action on this note may have already been barred by the time the executrix was qualified, this Court may not invoke the statute of limitations argument of its own initiative. *See Hickman v. Stout*, 29 Va. (2 Leigh) 6 (1830). As to the $10,000 note, this Bill of Complaint is satisfactory. The Court will overrule the demurrer as to the note.

As to the alleged squandering of estate assets, this Court has reviewed the expenditures listed in exhibit 10 of the Bill of Complaint. The only expenditures which occurred after the death of Constance are listed on page 13. None of those seem to be for "home improvements." The gist of paragraph 22 in the Bill of Complaint is that the expenditures during the last eight months of Constance's life were wasted. As discussed under Count I, the Complainants do not have proper standing to attack activities of the guardian. To attack the executor for not taking action on these causes of action is simply a back-door attack on the guardian. This Court does not see any specific allegation of wasteful expenditures on the home after Constance's death. Therefore the Court will sustain the demurrer as to this category.

As to the taxes, the Complainants allege in paragraph 29 of the Bill of Complaint that the Respondent Executrix failed to file the taxes on time. Paragraph 29 also refers to the guardianship period, which this Court will ignore as discussed above. The IRS letter attached as Exhibit 15 indicates that payments were being made before Constance's death although the account still had a balance at the time of her death. Blood filed the returns and reached agreement with the IRS in her capacity as guardian. While it is true that the debt was not paid off completely at the time of death and at the time of qualification as executrix, this Court finds that the tax issue was resolved by the guardian. The unpaid balance was merely a liquidated debt of the estate. Therefore the demurrer will be sustained as to the taxation issue.

As to the fourth category, overpayments to the executor, the only allegation in the Bill of Complaint is paragraph 30: "Blood did not account for

all fees paid to her. She did account for fees of approximately $9,700.73 that she is required to forfeit pursuant to Va. Code § 26-19." Virginia Code § 26-19 states:

> If any such fiduciary wholly fail to lay before such commissioner a statement of all matters required in § 26-17 together with all other statements and items therein required for any year, within four months after its expiration, and, though a statement be laid before the commissioner, yet if the fiduciary be found chargeable for that year with any money or other property, not embraced in the statement, he shall have no compensation for his services during such year ... .

Va. Code Ann. § 26-19 (Michie 1997 Supp. 1998). The relevant language from § 26-17 would be the subsection on personal representatives. That section, § 26-17.5, instructs the personal representative to file a first accounting and then any additional accountings. Thus the Complainants are alleging that Respondent Blood failed to properly file the accountings. Although the allegation is again not very concrete, it is sufficient to survive a demurrer. Therefore, the demurrer is overruled.

Finally, the Complainants allege that Blood and her brother lived in the house during the administration of the estate and failed to pay rent into the estate. Specifically, they allege that the Respondent executrix should be surcharged for "all rents that Blood should have paid to the Estate for living in the Home prior to the conveyance." However, the Complainants admit that under the terms of Casada's will, the house is given to Blood and her brother. It is well-established that realty passes at death by the probate of the will or, in the case of an intestate decedent, by operation of law. No deed is necessary to effectuate the change in legal title. *See Eppes v. Demoville*, 6 Va. (2 Call) 22, 37 (1799) ("The heir is as much the legal representative of the testator as to the real estate, as the executor is as to the personal; and, with the land, the heir takes all deeds, and writings related to them, whether for conveying the title or protecting his quiet enjoyment; with none of which could the executor intermeddle ... .") Therefore, Blood and her brother owned the house as soon as the will was admitted to probate. The will would have been admitted at the time of qualification of Blood as executor, which was shortly after Casada's death. Therefore, there could be no rent to charge. This Court finds no cause of action stated based on the Respondent's residing in the house. The demurrer will be sustained as to this aspect of the Bill of Complaint.

Although the Complainants do have standing to challenge the executrix, only some parts of Count II allege sufficient facts to withstand the demurrer.

Specifically, this Court will overrule the demurrer as to the claims concerning the $10,000 note and the fees paid to the executrix. The demurrer will be sustained as to the claim for squandering estate assets by expenditures on the home, the claim for mishandling the taxes, and the claim for living in the house without paying rent.