# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

ZAYDE B. RENNOLDS, ET AL. V. ELSIE L. BRANCH, ET AL.

May 1, 1944.

Record No. 2776.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*John P. Leary* and *Ralph T. Catterall*, for the appellants.

*Stuart G. Christian* and *John T. Wingo*, for the appellees.

GREGORY, J., delivered the opinion of the court.

The trustees under the will of John P. Branch brought this suit to obtain a construction of his will. They were holding property of the approximate value of $250,000 in trust for Blythe W. Branch for his life. He died in 1942 and the trustees sought the guidance of the court in the distribution of the corpus of the fund. Margaret Branch Glasgow, a daughter of the testator, was conceded to be entitled to one-half. The appellants, Zayde Branch Rennolds and Louise Branch claimed all of the other half, while the executors of John Akin Branch claimed one-third of this half. The decree of the court established this claim of the executors. Error is assigned to this decree.

There is no dispute as to the facts. John P. Branch died in February, 1915, leaving surviving four children as follows: John Kerr Branch, Blythe W. Branch, Effie Branch and Margaret Branch Glasgow. The testator had no other issue. His will was made in 1911 and duly probated in 1915.

John Kerr Branch, the executor of his father, died testate in 1930, survived by John Akin Branch and his daughters, Zayde Branch Rennolds and Louise Branch.

Effie Branch, a daughter of the testator, died in 1934 without issue. John Akin Branch, brother of the appellants, and grandson of the testator, died testate and without issue in 1935, leaving his entire estate, with a few immaterial exceptions, to his wife, Elsie L. Branch in fee simple and she was named as one of his executors.

Blythe W. Branch, another son of the testator, died testate but without issue on May 22, 1942.

Margaret Branch Glasgow, the remaining child of the testator, is still alive.

The particular clause of the will of John P. Branch which is here for construction is the 5th clause. It reads as follows:

"5th. One other of the said four equal parts or portions in the foregoing clause of this, my will, referred to and pro-

vided for, I give to my said son, John Kerr Branch and Arthur G. Glasgow In Trust, nevertheless, to hold the same for the support and maintenance of my said son, Blythe W. Branch for and during the term of his natural life, and the income and profits thence arising they shall pay over to my said son quarterly, the first payment to be made at the expiration of six months from the date of my death.

"I authorize and empower my son, the said Blythe W. Branch if he shall have any child or children, grandchild or grandchildren, great grandchild or great grandchildren living at his death, by his last will and testament, to dispose of the principal sum herein and hereby given in trust for him during his natural life as he may in that event determine, desire and direct.

"Should he not, in such case, by his last will and testament, appoint and provide for the disposition of the same, then I will and direct that at the death of my said son, the principal of the said sum so held in trust for him shall pass and descend to such child or children as he may leave, him surviving, and the issue of such as may have died leaving issue, such issue to take per stirpes; but should he leave no child, nor the issue of any child, him surviving then said principal sum shall pass and descend to my own child or children then living, and the issue of such as may have died leaving issue, such issue to take per stirpes."

The following language of the latter part of the clause is repeated and must be construed: " * * * but should he, (Blythe W. Branch), leave no child, nor the issue of any child, him surviving, then said principal sum shall pass and descend to my own child or children then living, and the issue of such as may have died leaving issue, such issue to take per stirpes".

It will be observed that the trust was to be held for the benefit of Blythe W. Branch for his life, and the income paid to him quarterly. If he die survived by a child, a grandchild or a great grandchild, he is given a general power of disposition by will. If he is so survived and fails to exercise the power, then the remainder shall pass to his (Blythe's)

children who survive him and the issue *per stirpes* of such of his children who may have died leaving issue.

Blythe W. Branch died in 1942, leaving no issue. The power of appointment or disposition of the estate never came into being, and the remainder provided for his children never became operative, for he had no issue. Therefore, the devolution of the remainder passed under the quoted portion of the 5th clause.

The children of John P. Branch, the testator, were made the life tenants in four separate similar trusts. These children, namely, John Kerr Branch, Effie Branch, Blythe W. Branch, and Margaret Branch Glasgow, all survived the testator and, with the exception of Mrs. Glasgow, are now dead. John Kerr Branch died in 1930, survived by three children, John Akin Branch, Zayde Branch Rennolds, and Louise Branch. The fund in which he enjoyed a life estate under his father's will passed under his (John Kerr Branch's) will, he having been survived by three children, and the circumstances giving rise to the exercise of the power of appointment given him by his father having come into being.

Effie Branch died in 1934 without issue. The trust fund provided for her during her life passed under her father's will *per stirpes* to her living brother, Blythe, her living sister, Mrs. Glasgow, and the three children of her deceased brother, John Kerr Branch.

At the time of the death of Blythe W. Branch in 1942, John Akin Branch had died in 1935 without issue, but leaving a will in which he devised and bequeathed all of his property to his widow, Elsie L. Branch. He survived his father and his aunt Effie, but predeceased his uncle Blythe.

The appellants, Zayde Branch Rennolds, and Louise Branch, claim that they are entitled to all of the one-half which is in dispute, to the exclusion of the estate of John Akin Branch, because they alone survived the life tenant, Blythe W. Branch. They claim that they are "the issue of such as may have died leaving issue, such issue to take *per stirpes*", and that their brother, John Akin, having prede-

.ceased Blythe W. Branch, and having left no issue, his estate is entitled to no part of the one-half.

The estate of John Akin Branch, now represented by his widow who is the beneficiary under his will, contends that the estate is entitled to one-third of the one-half; that it and the appellants should share equally in the fund; that John Akin, at the time of the death of his father, John Kerr, was one of the issue left by the father; that while the children of the testator were required to survive Blythe W. Branch, the life tenant, no such condition was attached to the issue of the children of the testator, and that upon the death of John Kerr Branch, John Akin Branch became a remainder-man, and that the remainder could be defeated only in the event that Blythe have issue who should survive him (Blythe), which event never occurred.

The court below, in an able opinion, after noting that the law favors the early vesting of estates and that there was no language in the will which expressed a contrary intention, was of the opinion that the issue of John Kerr Branch, a deceased child of the testator, took a vested interest in the estate as of the death of John Kerr Branch in 1930, subject to be defeated upon the death of Blythe W. Branch leaving a child or children and the issue of such as may have died leaving issue, (a condition or event which never arose), and that John Akin Branch having died in 1935, the representative of his estate is entitled to share equally with the two sisters of John Akin Branch, who are now the appellants.

The particular language: " * * * then said principal sum shall pass and descend to my own child or children *then living* and the *issue* of such as may have died *leaving issue*, such issue to take *per stirpes*", must be considered in the light of events which have occurred, namely: The death of Blythe W. Branch in 1942 without issue, the death of Effie Branch in 1934 without issue, and the death of John Kerr Branch *with* issue in 1930. Margaret Glasgow, the remaining child, who is still alive, is, of course, entitled to receive one-half of the fund, she being the sole surviving child of the

testator and clearly entitled thereto under the express terms of the will.

The language quoted above constitutes a gift, first, to the testator's children then living. Margaret Glasgow was the only child of the testator then living at the death of Blythe. Secondly, the gift was to the issue of such (of testator's children) as may have died *leaving* issue. The only issue of John Kerr Branch who survived him were the two appellants and his son, John Akin Branch. They were in being when the testator made his will and also when he died. They constituted the only issue of the testator's child, John Kerr, at the latter's death in 1930. " * * * to the issue of such as may have died *leaving* issue", was the event set up by the testator for the vesting of the estate in that issue. The estate had to vest in the issue of John Kerr Branch when he died because it was then that "he died leaving issue". He did not die leaving issue in 1942. He died in 1930 leaving issue, and immediately that issue took the estate, subject to being divested of it upon the death of Blythe survived by issue. This latter event never happened, for Blythe was not survived by issue, so the estate that vested in the issue of John Kerr Branch was never divested.

The thought that the testator intended the issue of his deceased child or children to take the estate at the death of such deceased child or children is emphasized by the testator's use of the expression "then living" when thinking of his own children, and his failure to use that expression when thinking of the issue of his deceased child or children.

The chancellor below has aptly and clearly stated his views in which we concur. His language is as follows:

"The court can but construe the words of the testator as used by him. He has with respect to his own children expressly made survivorship of the life tenant a condition, failing which his children cannot be remaindermen. This he does by inserting the inexorable words 'then living' as one of the qualifications his children must possess. But when he states the qualifications for the issue of his children he significantly, and apparently deliberately, omits this qualifi-

cation or condition; indeed, he appears content to mention another, and a much less drastic, condition, namely; that such issue need only survive their own parent—'as may have died *leaving* issue.'

"Unless this phrase 'leaving issue' bears this connotation of time, that is, surviving the parent, it has no meaning; the clause would have the same result if 'leaving issue' be omitted. For if there be no issue to take, then there can be no takers. If the clause be read with these two words omitted the point will be appreciated.

"Finding no expression or implication here or elsewhere within the four corners of the will to the contrary, the court is of the opinion that the members of the class described as 'issue' of a deceased child of the testator are to be determined at the most reasonable and appropriate point of time; that is, at the death of their ancestor, the testator's child. This is the earliest reasonable time to determine this class, unless express language or clear implication demand otherwise; for at any earlier time the class may be incomplete. No sound reason is suggested for going counter to the announced policy of Virginia favoring early vesting, or early ascertainment of members of a class, by postponing the time beyond the death of the parent or ancestor of the issue to be selected as takers."

"The court therefore holds that the class 'issue' here is composed of the issue of John Kerr Branch as they existed at the death of John Kerr Branch; and that there were three members of the class, one of whom was John Akin Branch, since deceased."

In Virginia there are numerous cases in which the general rule regarding the early vesting of estates has been applied. The most recent are *James* v. *Peoples Nat. Bank*, 178 Va. 398, 17 S. E. (2d) 387, and *American Nat. Bank, etc., Co.* v. *Herndon*, 181 Va. 17, 23 S. E. (2d) 768.

We cannot undertake to analyze and harmonize all the cases. Each case must turn on its own peculiar facts. In those cases in which the vesting of the estate has been postponed until the death of the life tenant or some other event,

such postponement was clearly indicated in the will and compelled by the peculiar language used by the testator.

The particular language of the testator in this case did not require that the issue of a deceased child should survive Blythe W. Branch, the life tenant. The issue did not take the estate from their father, John Kerr Branch, they took an original gift from the testator to which there was not attached any condition of survivorship of the life tenant. *Jameson* v. *Jameson*, 86 Va. 51, 9 S. E. 480, 3 L. R. A. 773. There were no words of futurity attached to the substance of the gift to the issue of a deceased child of the testator. Such issue took the estate immediately upon the happening of the required event, namely, the death of John Kerr Branch. To emphasize, we repeat, they took it not from John Kerr Branch, their father, and not from or through Blythe W. Branch, their uncle, but they took the estate at that time from the testator. This being true, only the enjoyment of the estate was postponed to a future time. Words of futurity do not attach to the substance of the gift.

In speaking of the Virginia rule and policy regarding the early vesting of estates, the learned chancellor concludes:

"It is thought that any other conclusion than that here reached and announced would tend to the undermining of the settled Virginia rule or policy. No jurisdiction has been a stronger adherent of this rule than has ours. The suspected departure or modification has now in the two more recent cases been authoritatively denied and the ancient principles again announced with the utmost firmness and vigor. Stability in doctrine and policy is assuredly desirable. It is considered by the court that this decision hews to the line and respects the ancient landmarks; that any other would encourage the thought that the vigor of the rule and the strength of the policy have been, or are about to be, relaxed and weakened."

Counsel for the appellants earnestly maintain that a consideration of the language of the whole will indicates that the intention of the testator was to defer the vesting of the estate in the issue of a deceased child until after the death of

Blythe W. Branch in 1942, while counsel for the appellees affirm that there was no language in the will which serves to remove the case from the general rule regarding the early vesting of estates; that the earliest practical time for such vesting in this case was in 1930, at the death of John Kerr Branch, and that the issue of John Kerr Branch should be determined at that time.

Where an estate cannot be vested at the death of a testator, as where the gift is to the heirs or next of kin of some person other than the testator, the rule seems to be stated with clarity in 69 C. J., sec. 1280, page 266, in this language:

"Gifts to 'Heirs', 'Next of Kin', Etc. of Third Persons. The same general rule as applies to a gift to the testator's own heirs, next of kin, or the like has been said to be applicable where the heirs or next of kin are of another than the testator, in which case the rule is that the gift refers, for determination of the class, to the death of such other unless the context of the will clearly manifests a contrary intent. * * * "

Under the foregoing rule, there being no contrary intent appearing in the will, the estate vested in the issue of John Kerr Branch at his death in 1930, at which time John Akin Branch, his son, was in being.

Adverting to the language of the particular clause above quoted, the appellants contend that it in effect sets up a condition precedent to the vesting of the estate in the child or children of the testator and their issue where such child or children have died leaving issue, and that the possibility of the condition precedent being performed continued to exist until the death of Blythe W. Branch in 1942 without issue, at which time John Akin Branch was not alive as issue of John Kerr Branch, and at that time the issue should have been ascertained. The learned chancellor below has decided that the condition was a condition subsequent. He expressed himself thus:

"If called upon to do so the Court would specify the technical estates which existed at and after the death of

John Kerr Branch as follows: A remainder vested in right in John Akin Branch, subject to be divested upon the intervention of a condition subsequent,—the birth of a child to the life tenant, Blythe W. Branch. We need, not specify further; because the divesting contingency never occurred and the remainder continued vested in right until it fell in upon the death of the life tenant; and it then ripened into enjoyment for the remainderman's lawful successors in title."

We think the conclusion of the chancellor is correct. It is often very difficult to draw a distinct line between conditions precedent and subsequent. In Minor on Real Property, Second Edition, sec. 511, the author says: "It is an invariable principle of the common law that they (conditions precedent) *must in all cases be performed* or complied with before the estate can vest." Therefore, if the death of Blythe W. Branch without issue was a condition precedent to the vesting of the estate in the issue of John Kerr Branch, it naturally did not vest in such issue until 1942, at which time John Akin Branch was not alive to answer that description.

On the other hand, Mr. Minor, at sec. 512, describes a condition subsequent as, "one which is to be performed or fulfilled *after the vesting* of the estate, and the intent of which is to *defeat it*". Therefore, if the death of Blythe W. Branch with issue was a condition subsequent, and we think it was, the estate already having vested in the issue of John Kerr in 1930, and Blythe having died without issue in 1942, the condition subsequent was not performed and it, of course, did not defeat the estate which had already vested in the issue of John Kerr Branch in 1930.

Mr. Minor, in the same volume and edition, at sec. 713, says:

"The student will recall the rule of construction applied to *conditions precedent,* whereby it is presumed wherever possible that a condition is subsequent rather than precedent in order that thereby the estate may vest the sooner, the law favoring the vesting of estates.

"This rule is often applied in case of remainders which on their face appear to be *contingent*, thereby creating *vested* remainders which are liable to be *divested* by the happening of the contingency (construed as a *condition subsequent*), instead of construing the contingency as a *condition precedent* to the vesting of the estate (which construction would render the remainder *contingent*). The application of this rule not infrequently involves some difficulty. If the words importing contingency are a part of the description of the remainderman, the remainder is contingent. If, on the other hand, the words of contingency describe an event, the happening of which is to take away from the remainderman an interest, which in the absence of such event he would retain, the remainder is vested subject to be divested."

And, in the latter portion of the same paragraph, the author says:

"Upon similar principles, if the estate be given to a life tenant with remainder to *ascertained* persons with the proviso that in the case of the death of one of them during the life estate his children shall take his share, the remainder is not contingent on survival of the life tenant, but vested, subject to be divested out of each by his death before the life tenant, and vested in his children if he leaves any."

If the language is doubtful or ambiguous the words and phrases used are to be so construed as to vest the estate if that be a reasonable construction. When words imply futurity of time, courts are accustomed to construe the expressions as meaning the time the possession shall accrue rather than the conditions upon which the right shall vest. Minor on Real Property, Second Edition, Vol. 1, sec. 714; 33 Am. Jur., Life Estates, Remainders, &c., secs. 88 and 89.

We are, therefore, of the opinion that the condition that Blythe W. Branch die without issue surviving him did not prevent the immediate vesting of the estate in the issue of John Kerr Branch at his death in 1930, but that if issue had survived the life tenant at his death in 1942, this event

would have defeated the estate which had previously vested in the issue of John Kerr Branch.

Counsel for the appellants earnestly contend that the language in other clauses of the will disclose his intent that the vesting of the estate was to be postponed until the death of the life tenant without surviving issue. They say the language in clauses 2 and 3 of the will clearly manifests such an intent and, therefore, the rule favoring the early vesting of estates does not apply. They argue that inasmuch as the testator used the expressions "my own child or children then living, and the issue of such as may have died leaving issue" a number of times in the will, the same meaning of these words used in other parts of the will should be applied to the 5th clause, and when that is done it makes it clear that the testator intended to designate a class of takers, all of whom must be alive at the time of the simultaneous taking, notwithstanding he does not repeat the words "then living".

In the second clause the testator provided that the proceeds of the sale of the residue of his real estate shall "be equally divided between my children living at my death and the issue of such as may have previously died leaving issue". It is noted that "my children" had to be "living at my death", but no such qualification or condition was mentioned when he referred to the "issue of such as may have previously died leaving issue." Under this clause the testator has created a class composed of his children living at his death and the issue of deceased children also living at his death.

The "issue of such as may have previously died leaving issue", in the second clause, in relation to the time for ascertaining the class of takers, means as of the death of the testator. There is nothing to the contrary in the will. The language does not admit of any distinction between the time the living children take and the time the issue of those who may have died take. They are to take simultaneously, and they form one class. This is not true in regard to the language in clause 5. What is said of clause 2 appears to be true regarding clause 3.

We think that the language of clauses 2 and 3 have little, if any, bearing upon the construction of the particular language of clause 5. In the latter clause the situation is different. Here there is the intervention of a life tenant, and a substantial difference in the language used. We are not called upon to explain why the testator used language in the 5th clause which provided that his children, in order to take, should survive the life tenant, while in describing the issue of deceased children the words "then living" were not attached as a condition. The testator must have had in mind a different object to be accomplished. It must be presumed that he knew the legal effect of the words used in the one instance and omitted in the other. *French* v. *Logan*, 108 Va. 67, 60 S. E. 622; *McComb* v. *McComb*, 96 Va. 779, 32 S. E. 453; *Rady* v. *Staiars*, 160 Va. 373, 168 S. E. 452.

Our conclusion is that there is no language in the will which takes the case from the general rule regarding the early vesting of estates.

We are of the opinion that the decree should be affirmed.

*Affirmed.*