# Richmond

## George B. Aldridge, et als. v. Katharine G. Rodgers, et als.

April 23, 1945.

Record No. 2913.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*William Earle White, Frederick H. Cole, E. Griffith Dodson* and *Gilliam & Bond,* for the appellants.

*Williams, Cocke & Tunstall,* for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

First and Merchants National Bank of Richmond, Virginia, a national banking corporation, and John B. Jenkins, Jr., executors under the will of John H. Rodgers, deceased, instituted this suit for the purpose of construing the will, and seeking the aid of the court in determining the proper method of administering the estate and carrying into effect certain trust provisions set forth in the residuary trust created by the will.

Katharine G. Rodgers, the widow of John H. Rodgers, The Lincoln Foundation and sixty-four other interested parties were named as defendants to the bill of complaint.

Pursuant to the stipulation of counsel, the cause was heard on the bill, the several answers filed and a copy of a Trust Agreement dated May 9, 1928, together with such accounts as were required by the executors.

On the 9th day of May, 1928, John H. Rodgers and Katharine G. Smith, in contemplation of marriage, entered into a Trust Agreement for the purpose of providing for the "adequate support, comfort and welfare of the said Katharine G. Smith." On the 29th day of April, 1939, Rodgers executed his last will and testament, naming the bank and Jenkins as executors and trustees.

On January 15, 1940, he departed this life leaving an estate valued at $3,500,000. While his will contains twenty-one articles, the provisions involved in this suit are Articles III, V and XI.

In the trust agreement entered into on May 9, 1928, dealt with under Article III of the will, it was agreed that within one year after the death of Rodgers there should be paid to his widow the sum of $50,000, and further, that there should be transferred to the trustees under the trust agree-

ment the sum of $500,000. The agreement further provided that the net income of the trust should be paid to his widow during her life, and that upon her death without issue, the corpus of the trust should be paid to The Lincoln Foundation, a charitable organization.

Mr. Rodgers died without issue.

Article V of the will sets up a trust of seventy thousand dollars for the benefit of the testator's sister, Jessie Daniel, during her lifetime, and provides that upon the death of the life beneficiary, the fund shall be divided among the children of the life tenant. That article also sets up similar trusts of seventy thousand dollars each, for the benefit of Rosa Cobb, Georgie Youngblood, Ettie Aldridge, sisters of the testator, and Nettie Rodgers, a sister-in-law. It provides that if the life tenant under any of these trusts leaves no issue, the fund is to be equally divided among the other trust funds created by Article V. Ettie Aldridge died June 7, 1942, leaving surviving her four children, all adults, and the trustees under her trust have distributed the seventy thousand dollar fund among these children. All the other life beneficiaries under the trusts created by Article V are still living.

Article XI of the will devises and bequeaths the rest and residue of the estate to the First and Merchants National Bank of Richmond and John B. Jenkins, Jr., as trustees. The article provides that if the income of the life beneficiaries of the trusts created under Article V and of the trust created pursuant to the antenuptial contract fall below certain stated amounts, then the income from the residuary estate shall be applied to bring up the income payable to the beneficiaries to the stated sums. Article XI also provides that if there shall be any diminution in the corpus of the several trusts, the same shall be brought up out of the residuary estate to the funds of the trusts as originally constituted.

Article XI of the will then provides for the disposition of the residuary estate in excess of two hundred and fifty thousand dollars.

The dominant issue involved is the court's construction of this language in Article XI of the will:

"In the event that during the existence of the said trusts hereinbefore referred to, or at the termination thereof, including the trust heretofore established for my wife, the value of the sum of the cash and securities comprising the residuum of my estate which is disposed of by this Article of my will, shall, in the absolute and uncontrolled discretion of my Executors and Trustees, be in excess of the sum of Two Hundred and Fifty Thousand Dollars ($250,000.00), then my said Executors and Trustees are hereby directed and empowered to distribute cash and/or securities out of the residuum of my estate of an amount equal to the excess in value as above determined of the said residuum over and above the said sum of Two Hundred and Fifty Thousand Dollars ($250,000.00), equally and pro rata among the several trusts created by Article V of this my will, and the said trust heretofore established for my wife on May 9, 1928. The sums of cash and/or securities so distributed by my Executors and Trustees to the various trusts above outlined shall thereupon become a part of the corpus of the said trusts and shall be held and disposed of in accordance with the terms and limitations of the said several trusts."

In *Cole* v. *Cole*, 79 Va. 251, 255, this is said: "After all but little aid can be derived in the construction of wills from adjudged cases, as each case must be governed by its own particular facts and circumstances. It has, therefore, been well said, that it may 'be doubted if any other source of enlightenment in the construction of a will is of much assistance, than the application of natural reason to the language of the instrument under the light which may be thrown upon the intent of the testator by the extrinsic circumstances surrounding its execution, and connecting the parties and the property devised with the testator and with the instrument itself.' "

In the brief of counsel for appellees, this is said: "The provisions of the will * * * are in several respects so unusual that it would be extraordinary to find them so closely

approximated in decided cases as to derive any illumination from them."

With that statement we are in full accord. The will is a lasting monument to the learning and perspicacity of the scrivener thereof. However, when we dispel from our mind the fact that we are dealing with an estate involving more than three million dollars, the solution of the questions involved becomes less intricate and we reach the same conclusion reached by the learned chancellor of the trial court in his construction of Article XI, viz.

■ "That the true construction and interpretation of Article XI of the will of John H. Rodgers, deceased, requires that First and Merchants National Bank of Richmond, and John B. Jenkins, Jr., testamentary trustees, do distribute cash and/or securities out of the residuum of the estate of said John H. Rodgers of an amount equal to the excess in value, as determined in the absolute and uncontrolled discretion of said Trustees, to the said residuum over and above the sum of $250,000.00, as of the time of each annual accounting filed by said Trustees, and as of the time of the death of Jessie Daniels, otherwise known as Jessie Daniel, of Rosa Cobb, of Georgie Youngblood, of Ettie Aldridge (which occurred on June 7, 1942), of Nettie Rodgers, and of Katharine G. Rodgers; * * * ."

The first assignment of error is without merit.

The second assignment of error is: "That the trial court erred in holding that the distribution directed by the decree should be made in proportion to the size of the corpus of the various trusts as originally constituted."

This contention is based upon the alleged direction of the testator contained in Article XI. There it is provided that all distributions from the residuary estate shall be made "equally and pro rata" among the five seventy-thousand-dollar trusts created by Article V of the will, and the five-hundred-thousand-dollar trust created for the benefit of Mrs. Rodgers.

■ The chancellor construed this direction as meaning that the distributions should have been made prior to the

death of Ettie Aldridge, in the following proportions: "50/85ths to the Katharine Rodgers trust and 7/85ths to each of the five trusts created under Article V; that after the death of Ettie Aldridge which occurred June 7, 1942, the distributions should be made in the proportions of 50/78ths to the Katharine Rodgers trust and 7/78ths to each of the four trusts created by Article V. In other words, the phrase, "equally and *pro rata*," simply means that the distributions were to be made equally as between the five trusts created by Article V and *pro rata* as between those trusts and the Katharine Rodgers trust.

The last assignment of error calls in question the action of the court in refusing to allow counsel fees to counsel for appellants out of the residuary estate, and directing that the fees should be paid from the corpus of the several trusts by the beneficiaries whom counsel represented.

Section 3430 of Michie's Code provides for the payment of counsel fees when, in the opinion of the court, counsel discovers, creates, or preserves a fund which enures to the common benefit of all litigants. *Mann* v. *Bradshaw*, 136 Va. 351, 118 S. E. 326.

In *McCormick* v. *Elsea*, 107 Va. 472, 59 S. E. 411, we held that the discretion vested in the trial court by the statute should never be exercised in a suit where the interests of the litigant whose fund is sought to be charged are antagonistic to the claimant whose counsel is seeking the fee.

Upon the whole case, we are of opinion that the decree is plainly right and must be affirmed.

*Affirmed.*

EGGLESTON, J., concurring in result.