# Staunton

## GEORGE B. ALDRIDGE, ET AL. V. FIRST AND MERCHANTS NATIONAL·BANK OF RICHMOND, ET AL.

September 6, 1950.

Record No. 3654.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*George E. Allen* and *Ligon L. Jones,* for the appellants.

*White, Hamilton & Wyche, John B. Jenkins, Jr.* and *Louis C. Shell,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

We are concerned here with the proper construction of Article V of the will of John H. Rodgers.

We had occasion to construe Article XI of that will in the case of *Aldridge* v. *Rodgers,* 183 Va. 866, 33 S. E. (2d) 654. Article V was also involved in that suit, but primarily with respect to the impact upon it of Article XI. However, the decision there bears upon the present question, as we shall point out.

By Article V, composed of seven numbered paragraphs, the testator established five identical trusts of $70,000 each,

one for each of his four sisters, Jessie Daniels, Rosa Cobb, Georgie Youngblood and Ettie Aldridge, and the fifth for his sister-in-law, Nettie Rodgers. The testator died February 15, 1940; Ettie Aldridge died June 7, 1942, leaving children; Rosa Cobb died July 10, 1948, leaving no children; Jessie Daniels died August 29, 1948, leaving children; Georgie Youngblood and the sister-in-law, Nettie Rodgers, are living.

Each trust was on the same terms as that to Jessie Daniels in paragraph 1 of Article V, which provided that $70,000 be paid, without interest, two years after testator's death, to the trustees, who should pay the net income therefrom to Jessie Daniels during her life, and on her death, or if she died within the two years, "the said fund shall be divided into as many equal shares as there are children of my said sister living at the time of said division and deceased children who have died leaving lawful issue then living, and one share shall go to each child, absolutely in fee simple, and one shall go to each group of lawful issue, *per stirpes*, absolutely in fee simple," but the trustees should hold the shares of the children under twenty-one until they were of age.

The seventh paragraph of Article V is the bone of contention here, and is in these words:

"In the event that my said sister in law shall die leaving no descendants or issue by her said marriage with my said brother, J. William Rodgers, surviving her, or in the event that any of my said sisters shall die leaving no descendants her surviving, then, the fund set aside in this article of my will for the benefit of my said sister in law or sister so dying shall be added to the shares of the survivors of my said sister in law and my sisters and be held and disposed of as part thereof."

The specific question to be answered is whether, under this clause, the children of Ettie Aldridge, who died June 7, 1942, as stated, are entitled to one-fourth of the trust fund of Rosa Cobb, who died childless on July 10, 1948.

The trial court held that they are not so entitled, but that the Cobb fund must be added in equal shares to the trust funds of Jessie Daniels, Georgie Youngblood and Nettie Rodgers, the three who were living when Rosa Cobb died. The only assignment of error is to this holding.

We hold that the trial court properly construed said paragraph 7 of Article V. As stated, Rosa Cobb died leaving no descendants. In that event, says paragraph 7 of Article V, the fund set aside in that Article for her benefit, "shall be added to the shares of the survivors of my said sister in law and my sisters and be held and disposed of as part thereof." The survivors "of my said sister in law and my sisters," *i. e.*, the survivors of that group thus definitely and specifically described, were the two sisters, Jessie Daniels and Georgie Youngblood, and the sister-in-law, Nettie Rodgers. Ettie Aldridge was then dead. She was not a survivor. She had no share to which part of Rosa Cobb's fund could be "added" and "held and disposed of as part thereof." The Ettie Aldridge fund was not then being held in trust. The trust created for her had ended at her death, six years before, in accordance with its terms of creation, and her share had passed to her children in fee simple. We so held in 1945, three years before Rosa Cobb's death, in *Aldridge* v. *Rodgers, supra.*

That case, as stated, construed Article XI but it also decided the status of the Ettie Aldridge trust fund. Article XI provided that when the value of the residuum of the estate exceeded $250,000, the excess should be distributed equally and *pro rata* among the several trusts created by Article V and the trust created by a separate instrument for the testator's wife, and become a part of the corpus of the said trusts, to "be held and disposed of" in accordance with the terms of said trusts. We affirmed the decree of the trial court holding that upon the death of any one of the five original beneficiaries named in Article V, the trust set up for the one so dying ceased, and her trust estate no longer participated in the excess from the residuum under Article

XI; and specifically that after the death of Ettie Aldridge, distribution of said excess should be made to the other four trusts in Article V; *i. e.,* to the trusts for Jessie Daniels, Rosa Cobb, Georgie Youngblood and Nettie Rodgers, and to the separate trust for the widow, thereby excluding the children of Ettie Aldridge.

The appellants, descendants of Ettie Aldridge, now argue that since Rosa Cobb took only a life estate in her trust fund, and had no children at the death of the testator, the remainder in the trust fund had to rest somewhere, and the only place for it to go was to the children of the beneficiaries of the other trusts, as a vested remainder, subject to being divested on the happening of a condition subsequent, the birth of a child to Rosa Cobb.

That contention collides head on with the provision of the will as to where the remainder should go, to-wit: "shall be added to the shares of the survivors of my said sister in law and my sisters;" to be held in trust during life and at death to their children, as provided by paragraph 2 of Article V, quoted above. The remainder after the death of Rosa Cobb was therefore a contingent remainder, being a remainder limited to uncertain persons, and never ready to come into the possession of a certain person, already existing and ascertained, on the termination of the particular estate. Graves, Notes on Real Property, sec. 174, p. 200. *Disney* v. *Wilson,* 190 Va. 445, 57 S. E. (2d) 144; *Mott* v. *National Bk. of Commerce,* 190 Va. 1006, 59 S. E. (2d) 97.

Appellants rely on *Rennolds* v. *Branch,* 182 Va. 678, 29 S. E. (2d) 847, to support their position. It does not do so. In that case the testator devised part of his estate in trust for his son Blythe W. Branch, with power of appointment, or in the absence of appointment, to his descendants, following which was the controversial clause: "but should he leave no child, nor the issue of any child, him surviving then said principal sum shall pass and descend to my own child or children then living, and the issue of such as may

have died leaving issue, such issue to take per stirpes." 182 Va. at p. 683, 29 S. E. (2d) at p. 848.

Blythe died in 1942 without issue. His brother, John Kerr Branch, had died in 1930 leaving three children, one of whom, John Akin Branch, died in 1935. The question was whether John Akin Branch's estate shared in the Blythe W. Branch trust under the quoted clause. We held it did, on the ground that the children of the testator who took under the clause at the death of Blythe were those "then living" but "the particular language of the testator is this case did not require that the issue of a deceased child should survive Blythe W. Branch, the life tenant," and so the issue of John Kerr Branch took a vested remainder upon the death of John Kerr Branch, not from him, but from the testator, subject only to be divested upon the birth of issue to Blythe. 182 Va. at p. 688, 29 S. E. (2d) at p. 850.

As was there said, the law favors an early vesting of estates, and doubtful or ambiguous language will be so construed if it can reasonably be done. The clause quoted from the Branch will was construed in accordance with Mr. Minor's definition that "if the estate be given to a life tenant with remainder to *ascertained* persons" (the testator's children living at Blythe W. Branch's death and the issue of any child of the testator who had previously died) "with the proviso that in the case of the death of one of them during the life estate his children shall take his share, the remainder is not contingent on survival of the life tenant, but vested, subject to be divested out of each by his death before the life tenant, and vested in his children if he leaves any." 182 Va. at p. 691, 29 S. E. (2d) at p. 852.

The clause quoted above from the Rodgers will did not give the remainder after the life estate of Rosa Cobb to ascertained persons, but to persons who could not be ascertained until her death; *i. e.*, to the sister-in-law and sisters who survived her, then to their children, if any. The words importing contingency were a part of the description of the remaindermen, and the remainder was therefore contingent. *Rennolds* v. *Branch, supra,* 182 Va. at p. 691, 29

S. E. (2d) at p. 852. If the Branch will had provided that on the death of Blythe W. Branch, the principal sum of his trust "shall pass and descend to my own child or children then living," and stopped with that, the disposition would have been similar to that of the Rodgers will; but the Branch will added "and the issue of such as may have died leaving issue," making an entirely different situation.

The case of *Balch* v. *Pickering*, 154 Mass. 363, 28 N. E. 293, 14 L. R. A. 125, is relied on by appellants. There language similar to the quoted clause from the Rodgers will was held to give a son of a deceased son of the testator a share in the trust fund of a daughter of the testator who died childless. This was on the ground that "probably the testator did not have it in mind to deprive any set of grandchildren of this secondary advantage because of the previous death of their parent;" and the general purpose manifested was one of equality among the different sets of grandchildren. The author of the opinion, Mr. Justice Holmes, expressed doubt about the correctness of his conclusion, and the holding was distinguished, if not overruled, in the later case of *Lawrence* v. *Phillips*, 186 Mass. 320, 71 N. E. 541, where a clause, very similar to the provision of the Rodgers will, created trust funds for the testator's children for life and at their death to their issue, and if any died without living issue then to the surviving children and their heirs. It was held that the children of the testator surviving one who died without issue took the latter's share to the exclusion of the son of another of the children who had previously died.

Other cases cited by appellants, including *Smith* v. *Smith*, 157 Ala. 79, 47 So. 220, 25 L. R. A. (N. S.) 1045; *Boston Safe-Deposit, etc., Co.* v. *Coffin*, 152 Mass. 95, 25 N. E. 30, 8 L. R. A. 740; *In re Cary's Estate*, 81 Vt. 112, 69 A. 736; *In re Fox's Estate*, 222 Pa. 108, 70 A. 954, are but illustrations of the rule that the words "surviving brothers and sisters" and the like, may be taken to mean "other brothers and sisters" when it is clear from the whole will that such is their intended meaning.

The Rodgers will, however, gives no such indication. To the contrary, as the trial court observed, the provisions of the will indicate a primary concern for his wife, sisters and sister-in-law. He provided that if a sister or sister-in-law died leaving children, the children should take their mother's share; but if any died leaving no children, her share should be divided and added to the share of the sisters and sister-in-law who survived. For a court to say that he meant to include also the children of one who was not a survivor would be to rewrite, not to construe.

No over-all purpose is to be gathered from this will to put the descendants of each sister on an equal footing with those of every other sister. A few words added to what he said in paragraph 7 of Article V and in Article XI would have accomplished that had he wanted it that way. Instead, as we held on the former appeal, *Aldridge* v. *Rodgers, supra,* he did in fact make a difference as among the different branches of his nieces and nephews by excluding those whose mother had died from participation after her death in the excess from the residuum of Article XI. We cannot disregard the plain language of Article V in order to avoid a similar result.

Appellants argue that such construction makes the rights of the parties depend upon the accident of time of death. That is frequently true of estates on condition; and it is also true that situations may be imagined or may even occur in which the provisions made by a testator bring about results that he did not foresee or desire; but if his directions are in plain words and not forbidden by law, they cannot properly be changed by construction. His will is the law of the court unless it be against the law of the land. We must determine what the testator meant by what he said, not by what it might be supposed he intended to say or should have said. *Chavis* v. *Myrick*, 190 Va. 875, 58 S. E. (2d) 881.

The decree below is

*Affirmed.*