## Richmond

BUCHANAN REALTY CORPORATION, ET AL. v. IDA LOONEY, ET AL.

November 30, 1959.

Record No. 5015.

Present, Eggleston, C. J., and Spratley, Buchanan, Miller, Snead and I'Anson, JJ.

The opinion states the case.

*H. Claude Pobst* and *Miss Marjorie Coleman* (*Pobst & Coleman,* on brief), for the appellants.

*A. T. Griffith* and *Brantley B. Griffith,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

The principal issue presented on this appeal is: Who owns 5/6 of a 138-acre tract of land described in a grant from the Commonwealth of Virginia to John Breeding on February 1, 1855, as "situate on the waters of Dismal Creek in Buchanan County, Virginia, on Half-way Branch, Squirrel Hollow, Wolf Pen Branch and, perhaps, other waters of said Dismal Creek"? There is no controversy between the parties as to the ownership of the remaining 1/6 interest.

Buchanan Realty Corporation and Jennie F. Miller instituted this proceeding claiming ownership and title to the entire tract. The defendants claim a 5/6 interest therein as heirs at law, and devisees of an heir at law, of the late W. W. Baldwin, who died intestate. Complainants asked the trial court to partition the land among its owners, if it was determined that they were not entitled to the whole.

After hearing the evidence, taken *ore tenus* and by depositions, and considering exhibits, the trial court filed a written opinion, holding that since W. W. Baldwin, under whom both parties claimed, had not conveyed the 5/6 interest owned by him to any one, the 5/6 interest passed to his heirs at law, and that the remaining 1/6 interest was owned in fee by the complainants. It further held that the owners of the land were entitled to have partition and ordered the partition by commissioners to be appointed for that purpose. In addition, it directed that the sum of $500 be paid to H. Claude Pobst and Marjorie Coleman, attorneys at law, for professional services rendered to all of the owners of the 138-acre tract for effecting a lease of coal rights on the said land, the payment to be made from funds in the hands of receivers appointed to collect the royalties therefrom; and that after paying the costs of the proceeding from funds in the hands of the receivers, the remainder should be distributed to the parties as their respective interests are in the decree adjudicated.

Complainants assign error to the action of the trial court in failing to hold that they were alone entitled to said land. Defendants assign cross-error to the allowance of the $500 fee to Pobst and Coleman and to the payment of the costs of the proceeding from the funds in the hands of the receivers.

There are numerous deeds filed as exhibits in the record; but since the controversy revolves principally around descriptions of the property involved, we will refer only to those which are material and pertinent in that regard.

Arminta Vandyke acquired the property in a deed from her husband, Charles Vandyke, dated May 28, 1889. The deed conveyed five adjoining tracts of land containing 900 acres, more or less, generally described as "lying on the Big Branch on the Long Branch and on the Ridge between the Big Branch and Long Branch waters of the Louisa Fork on Sandy River, in the County of Buchanan."

The several tracts were more specifically described by reference to five separate grants from the Commonwealth of Virginia to original patentees as containing 311, 200, 150, 181 and 138 acres, respectively. The 138-acre tract, the land in controversy here, was described as the same land granted by the Commonwealth of Virginia to John Breeding in 1855, and subsequently acquired by Charles Vandyke.

Arminta Vandyke died intestate about 1903, leaving surviving her, her husband and six children as follows: G. W. Vandyke, Mary Mutter, Loran Vandyke, Fernando Vandyke, Charley Vandyke, Jr., and Martha Dawson. Thereafter Martha Dawson died intestate, leaving surviving her husband and three children, to-wit: Archibald B. Dawson, James B. Dawson and Nicetie Smith.

The 1/6 interest of the heirs at law of Martha Dawson in the 138-acre tract is claimed by the complainants under several mesne conveyances from them and subsequent owners.

On April 2, 1904, G. W. Vandyke, Mary Mutter, Loran Vandyke and Fernando Vandyke, and their consorts, conveyed to their brother, Charley Vandyke, Jr., 3/4 of their 5/6 undivided interest in the 138 acres. The deed recites that the grantors had previously sold 1/4 of their 5/6 interest to W. A. Ayers and J. F. Griffeth, and refers to a decree entered in the Circuit Court of Buchanan County appointing commissioners to lay off and assign 1/4 of the 5/6 undivided area to Ayers and Griffeth, and the remaining 3/4 to Charley Vandyke, Jr. [It appears, however, that the commissioners failed to make the partition.]

On July 28, 1905, Charley Vandyke, Jr. and wife conveyed to W. W. Baldwin their 3/4 of 5/6 of a 421-acre tract, more or less, described as "lying in Buchanan County, Virginia, on the waters of Big Branch and on Long Branch waters of Dismal Creek tributaries of Louisa Fork on Sandy River and adjoining the lands of Archibald Dawson, Hugh Mutter, Loran Vandyke and Fernando Vandyke's tract, Walter Matney and others." It is agreed that the above description includes the 138 acres in question.

W. W. Baldwin acquired the remaining 1/4 interest in 5/6 of

the same land by deed of October 5, 1905, from J. F. Griffeth and W. A. Ayers and their wives.

Baldwin on September 21, 1909, sold to E. K. Boyd under a recorded written contract, all the coal, oil and gas and certain timber on his 5/6 undivided interest in a tract of land containing 500 acres, more or less, described as "lying on the waters of Big and Long Branches of Dismal Creek in said County, adjoining the lands of Walter Matney and others." He also granted rights of way over his remaining lands for removal of the products sold.

By deed dated November 1, 1909, W. W. Baldwin and wife, in consideration of "the sum of Five Dollars ($5.00) per acre, as the acreage is to be determined by actual survey made at the cost and expense of the parties of the first part," conveyed to E. H. Witten and John W. Flannagan, Jr., the following described land: "All that certain tract or parcel of land, lying and being in Buchanan County, Virginia, on Big Branch and Long Branch of Dismal Creek, adjoining the lands of Loran Vandyke, Hugh Mutter, Walter Matney, and others, being an undivided five-sixth interest in Six Hundred (600) acres of land, more or less, which said Six Hundred (600) acres were conveyed by Charles Vandyke, Sr., to Arminta Vandykes, by deed bearing date May 28, 1889, * * * and by deed from S. S. Dinwiddie, Commissioner, to Arminta Vandyke, bearing date December 13, 1889 * * *, and upon her death inherited by her heirs at law; and the said five-sixth interest therein was acquired by Charles Vandyke, Jr. and J. F. Griffeth and W. A. Ayres from the heirs at law of said Arminta Vandyke (three-fourth of said interest being acquired by Charles Vandyke, Jr. and one-fourth by said Ayres and Griffeth), and was acquired by W. W. Baldwin by two several deeds from Charles Vandyke and said Ayres and Griffeth, and to all of said deeds reference is here made for a more particular description of said land."

There was excepted from the above conveyance all timber which had been sold by Baldwin to Yellow Poplar Lumber Company, and the coal, oil, gas and mining rights and timber sold to E. K. Boyd.

On January 10, 1910, W. W. Baldwin, in "consideration of the sum of Five Dollars ($5.00) per acre, which amounts to $2,498.08," conveyed to C. L. Ritter all of the coal, oil and gas in, on and under his 5/6 undivided interest in two parcels of land, one, "lying on the waters of Dismal Creek and the Long Branch thereof containing 575.-29 acres," as specifically described by metes and bounds; and the second, lying on the two forks of the Long Branch of Dismal Creek,

containing 24.25 acres, as specifically described by metes and bounds; being the same two tracts formerly owned by Arminta Vandyke. In this deed, rights of way were granted to parties of the second part over other land of the grantors for the removal of the coal and minerals.

On February 23, 1910, Witten and Flannagan, "in consideration of $3,247.50, which is $6.50 per acre," conveyed to C. L. Ritter "five undivided sixths of the surface and all other estate conveyed" to the grantors by the Baldwin deed of November 1, 1909, with the same description in general, and by metes and bounds, as contained in the conveyance from Baldwin to Witten and Flannagan of January 10, 1910.

On the same day, February 23, 1910, E. K. Boyd and wife conveyed to C. L. Ritter all of their right, title and interest acquired in the above land under their contract with Baldwin, dated September 21, 1909. Thus, Ritter acquired a fee simple interest in 5/6 of the described property.

In June, 1953, Ritter conveyed to the C. L. Ritter Lumber Company such interest as he had in the land, and in the same year, the trustees and executors of C. L. Ritter, decreased, and the C. L. Ritter Lumber Company conveyed such interest as they had to Buchanan Realty Corporation and Jennie F. Miller, the complainants.

Since both parties claim under W. W. Baldwin, the common source of title, if the complainants have any title to the 5/6 interest in the 138-acre tract, it was necessary for them to show that such interest passed from Baldwin to Witten and Flannagan by deed of November 1, 1909. Subsequent deeds are referred to as showing that the description of the lands conveyed did not include the 138-acre tract.

There is no mention in the deed of November 1, 1909, nor in any of the subsequent conveyances mentioned that any part of the land therein conveyed was situate on Half-way Branch, Squirrel Hollow, and Wolf Pen Branch of Dismal Creek, or included with other land between Big Branch and Long Branch. The evidence shows that the 138-acre tract, a separate parcel, does not lie on Big and Long Branches of Dismal Creek.

The deed of February 23, 1910, from Witten and Flannagan to Ritter, made within less than four months after the deed from Baldwin was executed, describing the land conveyed as being a "5/6 undivided interest of the surface and all other estate" conveyed to them by Baldwin by deed dated November 1, 1909, and further as two certain

tracts situated on Big and Long Branches of Dismal Creek, within definite metes and bounds, is conceded not to include the 138-acre tract. Since the deed of January 10, 1910, from Baldwin to Ritter contains exactly the same description as that in the above mentioned deed of February 23, 1910, it must follow that the Baldwin deed did not include the 138-acres in his deed.

The declaration in the Witten and Flannagan deed of February 23, 1910, that the land therein described is the same as that conveyed to the grantors by Baldwin is an admission that Witten and Flannagan did not claim the 138 acres. *Holland* v. *Vaughan*, 120 Va. 324, 328, 91 S. E. 122; *Parrish* v. *Robertson*, 195 Va. 794, 801, 80 S. E. 2d 407; 16 Am. Jur., Deeds, § 174, page 536.

The description by metes and bounds in the above deeds of January 10 and February 23, 1910, clearly indicates that the land conveyed by Baldwin to Witten and Flannagan November 1, 1909, described as being 600 acres more or less, had been actually surveyed and thereby ascertained to be 599.54 acres. The consideration in the deed of November 1, 1909, was measured by the amount of the acreage, and the inclusion of 138 acres more in the conveyance would far exceed the 600 acres, more or less, specified in the deed, and reduce the consideration approximately 25% per acre.

Furthermore, the grant of rights of way over other lands of Baldwin in the latter's deed to Ritter of January 10, 1910, showed that Baldwin did not dispose of all of his lands.

It is in evidence that when John W. Flannagan, Jr., made a compromise settlement in 1940 of his indebtedness, conveying all of his holdings to a court receiver, he did not list any interest in the 138-acre tract in Buchanan County.

Sam Matney, 78 years of age, who owned land adjoining the 138-acre tract, testified he knew W. W. Baldwin; that when he talked to Baldwin, subsequent to the time C. L. Ritter acquired part of the Vandyke land, about selling or trading a part of the 138-acre tract to him, Baldwin told him he might have what he wanted of the land; but that he did not want to dispose of the coal thereunder.

Filed with the deposition of Nancy Johnson is a blueprint, introduced over the objection of complainants. The objection was not insisted upon however, and the court did not rule upon it. No error has been assigned to its admission in evidence.

Nancy Johnson had for many years lived with J. W. W. Baldwin and bore him seven children. She said the blueprint was found by

her in the papers of J. W. W. Baldwin after his death. It purports to show the 138-acre tract in controversy as being "Never conveyed by W. W. Baldwin." It also shows two adjoining tracts of 575.29 and 24.25 acres as being acquired by Witten and Flannagan in 1909. It is dated "9-15-48," and bears the legend:

"Map of Three Tracts of Land in fee owned by W. W. Baldwin, deceased, lying on the divides of Long Br., Big Br. and Half-way Br. of Dismal River, in Buchanan County, Virginia, showing tracts conveyed and unconveyed, designed as 1, 2 and 3, No. 3 unconveyed, Abstract and Map by J. W. W. Baldwin, C. Engr."

The 138-acre tract was designated as No. 3.

J. W. W. Baldwin, one of eight children of W. W. Baldwin, died during the pendency of this proceeding. He was a civil engineer by profession, and at one time county engineer of Buchanan County.

Nancy Johnson testified that J. W. W. Baldwin made the tracings and notes shown on the blueprint; that while she did not see him make the survey, or sign the map, she knew he was making it from survey visits to the land; and that he brought his books and notes home upon returning from his survey trips and told her that his purpose was to show what remained in the estate of his father, W. W. Baldwin.

J. W. W. Baldwin, by his last will and testament, devised all of his property to Nancy Johnson for and during her life and at her death to her children. These devisees are parties defendant, together with the children and grandchildren, the heirs at law of W. W. Baldwin.

Jennie F. Witten, widow of E. H. Witten, was devised the entire estate of her husband. She later married J. McG. Miller and is the present complainant, Jennie F. Miller.

We agree with the trial judge that the preponderance of the evidence justifies the conclusion that W. W. Baldwin did not intend to sell or convey, and did not convey any of the land within the 138-acre tract, which was a grant from the Commonwealth of Virginia to John Breeding, lying on Half-way Branch, Squirrel Hollow and Wolf Pen Branch; that his interest therein descended to his eight children upon his death intestate; and that the defendants are entitled to share therein in the proportion set out in the decree appealed from.

We find no merit in the assignments of cross-error. In the first place, defendants have failed to provide a transcript of the oral

testimony taken at the hearing on the petition of Pobst and Coleman asking for a fee of $500. Rule 5:1, § 3 (e) of Rules of Court.

The record, however, shows that a number of the defendants were infants during the pending of the proceeding and that Sycamore Coal Corporation asked for a lease from the claimants of the land to mine the coal thereunder. It was necessary to have authority from the court to enter into the lease. With full knowledge and consent of counsel for the defendants, Brantley B. Griffeth and A. T. Griffeth, a petition was presented by Pobst and Coleman asking for the necessary authority. They also prepared the other pleadings, introduced the evidence, drew the lease, and saw to its execution. All papers were submitted to defendants' counsel, who made no objection thereto, and took no part in the specific undertaking, except to ask that they be marked present at the taking of the evidence. The lease was effected at a highly satisfactory royalty. Marjorie Coleman, of the firm of Pobst and Coleman, and Brantley B. Griffeth, son of A. T. Griffeth, were appointed receivers of the royalty fund. We are told in the brief of counsel for complainants that the receivers had collected $21,000 at the time of the hearing, and that it was estimated further collections since will increase the fund to between $50,000 and $75,000.

The services of Pobst and Coleman were not antagonistic to the defendants. They were rendered in an incidental, but a separate and distinct undertaking for the benefit of all of the parties. As a result, a fund was obtained and preserved, which inured to their benefit.

The decree of the trial court recited that the fee was allowed to Pobst and Coleman because they had "rendered substantial service to all of the owners" of the land. It is well settled that the finding is binding on us, in the absence of a showing that it is plainly wrong or without evidence to support it.

There is no evidence that the trial court abused its discretion in allowing the fee or the amount thereof. The allowance is reasonable and moderate. In our opinion, it should be paid by the landowners in proportion to their respective interests. Section 54-71, Code of Virginia, 1950. *Mann* v. *Bradshaw's Adm'r*, 136 Va. 351, 379, 118 S. E. 326; *Aldridge v. Rodgers*, 183 Va. 866, 872, 33 S. E. 2d 654; *Allaun* v. *First, etc., National Bank*, 190 Va. 104, 113, 114, 56 S. E. 2d 83; 14 Am. Jur., Costs, sections 73, 74 and 75, pages 46 *et seq.*; 20 C. J. S. Costs, section 123, pages 361 *et seq.*

■ These proceedings were, in effect, a suit for partition of land,

and it was also proper that the court costs should be borne by the owners of the land in the proportion of their ownership.

For the reasons stated, the decree of the trial court is affirmed in all respects, and the cause remanded to the trial court for such further proceedings as may be necessary in carrying out the provisions of the decree appealed from.

*Affirmed.*